301 Ga. 476
FINAL COPY

S17A0364. BAILEY v. THE STATE.

GRANT, Justice.

A DeKalb County jury found appellant Stephen Bailey guilty but mentally ill on all thirteen counts of an indictment filed in connection with the stabbing deaths of Ursula Peterson and her adult daughter Dominique Martin, who were his upstairs neighbors.[1]  Bailey contends that the trial court erred by denying his

---

[1] The crimes occurred on November 27, 2010.  On October 11, 2013, a DeKalb County grand jury indicted Bailey on two counts of malice murder, two counts of felony murder, two counts of aggravated assault, two counts of possession of a knife during the commission of a felony, burglary, and four counts of cruelty to children in the third degree.  At a trial held October 7-11, 2013, the jury found Bailey guilty but mentally ill on all charges.  The trial court sentenced Bailey to serve life without parole for each count of malice murder, running consecutively with each other; five years on each of the possession of a knife during the commission of a felony counts, running consecutive to the malice murder sentences; 20 years on the burglary count, running concurrently with the sentences for malice murder and possession; and one year on each of the four counts of cruelty to children, running concurrently with the sentences for malice murder and possession.  The trial court purported to merge the two felony murder verdicts into the malice murder convictions and to merge the aggravated assault verdicts into the felony murder verdicts; while the trial court's nomenclature was incorrect, the result was proper:  the felony murder verdicts were vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993), and the aggravated assault verdicts merged into the malice murder convictions.  See *Culpepper v. State*, 289 Ga. 736, 738 (2) (a)

motion to suppress evidence, denying his *Jackson-Denno*[2] motion, and refusing to give an instruction on voluntary manslaughter. Finding no error, we affirm.

I.

Viewed in the light most favorable to the verdict, the evidence at trial shows that on November 27, 2010, Bailey says he heard noises coming from the apartment above his; in response, he went upstairs and knocked on the door of Peterson's apartment. Martin answered the door but denied making any noise—two of her three minor children were asleep, and the other was watching a movie with Martin. Bailey became irate, and began to stab Martin with a knife he had brought upstairs. When Peterson attempted to intervene, Bailey pushed her into a wall and began stabbing her too. Despite her injuries, Peterson managed to instruct one of Martin's children to call 911, which the child did.

---

(715 SE2d 155) (2011) (aggravated assault merged into malice murder where no deliberate interval between the infliction of non-fatal and fatal injuries to each victim). On November 7, 2013, Bailey filed a motion for new trial, which was amended on December 31, 2014. Following a hearing, the trial court denied the motion on June 17, 2016. Bailey filed a timely notice of appeal, and the case was docketed in this Court to the term beginning in December 2016 and was thereafter submitted for decision on the briefs.

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

Responding officers testified that when they arrived at Peterson's apartment, there was blood throughout the apartment, and the furniture was in disarray. Martin was dead, with cuts to her face and back, and her throat was slit "from ear to ear." Peterson was alive, but struggling to breathe. She suffered cuts to her chest and abdomen; her throat, too, had been slit. Peterson ultimately died from her wounds.

After noticing blood on the door handle of Bailey's apartment, but seeing no evidence that the victims had left their apartment, the police obtained search warrants for both the victims' apartment and Bailey's apartment. A DeKalb County police investigator then knocked on Bailey's door, and Bailey's mother answered. The investigator saw Bailey sitting on the couch and asked him, "Do you know why we are here?" Bailey responded, "Yes." The investigator then placed Bailey under arrest with no further conversation. Bailey was transported to the DeKalb County Police Headquarters, where he waived his rights before being interviewed. During the interview, which lasted approximately one hour, Bailey admitted that he had become angry when he heard the residents in the apartment above him "stomping and throwing stuff," that he had gone up to the

3

apartment to confront them, and that he had taken a kitchen knife "just in case" he was attacked by the women. He told the investigator that when he reached the victims' apartment, the daughter had answered the door and initially denied making noise, but then she "got an attitude and I got mad." He stated that he attacked the daughter first and then attacked the mother when she came into the living room. Bailey told investigators he had put the clothes he was wearing in a hamper and put the knife he used in the kitchen sink. During their search of Bailey's apartment, police seized, among other things, a leather jacket and blue jeans; DNA analysis revealed that the blood on the jeans and jacket matched that of Peterson.

Bailey pleaded not guilty by reason of insanity and testified in his own defense at trial. He admitted to stabbing and killing both victims. He told the jury he wanted revenge "from them [the victims] reading my mind." Four expert witnesses testified about Bailey's mental health. While the experts testified to various—and at times conflicting—diagnoses, none of the experts testified that Bailey was unable to differentiate right from wrong. In fact, Bailey

admitted that he knew that what he had done was wrong, and that he likely would not have done it if the police had been present.

Although Bailey does not expressly challenge the sufficiency of the evidence, we have reviewed the record and conclude that there was sufficient evidence for a rational trier of fact to find Bailey guilty but mentally ill beyond a reasonable doubt of the charges on which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

## II.

Bailey's first contention is that the trial court erred by denying his motion to suppress various items, including clothing and a knife, recovered from his apartment. He argues that these items were the fruits of an unlawful search of his home because law enforcement officers lacked probable cause to conduct the search. He is incorrect.

A search warrant will issue only upon facts "sufficient to show probable cause that a crime is being committed or has been committed." OCGA § 17-5-21 (a). To determine if probable cause exists to issue a search warrant, a magistrate

must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Lemon v. State*, 279 Ga. 618, 620 (1) (619 SE2d 613) (2005). Appellate courts review a warrant under the totality of the circumstances standard set out in *Illinois v. Gates*, 462 U. S. 213 (103 SCt 2317, 76 LE2d 527) (1983). See *State v. Palmer*, 285 Ga. 75, 78 (673 SE2d 237) (2009). Our task is to determine "'if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrant.'" Id. (quoting *Sullivan v. State*, 284 Ga. 358, 361 (667 SE2d 32) (2008)).

Here, the evidence shows that the officers plainly had probable cause to search Bailey's apartment. In the affidavit accompanying the search warrant application, the investigator stated that there were signs of a struggle in the victims' apartment, that there were two victims with stab wounds, and that there were areas of blood spatter throughout the apartment. The affidavit further stated that fresh blood was located on the entry door handle of Bailey's apartment, which was located directly beneath the victims' apartment.

After conducting a hearing on Bailey's motion to suppress, the trial court denied the motion. We agree with the trial court, and with the magistrate who issued the warrant. Because there was probable cause to support the search of Bailey's apartment, the trial court did not err in denying his motion to suppress.

## III.

After his trial, Bailey filed a motion for new trial challenging the admissibility of the statements he made before he was detained; specifically, he wished to exclude his affirmative response after the investigator asked, "Do you know why we're here?" In its order denying Bailey's motion, the trial court found that Bailey was not detained or in custody at the time that the question was asked and answered, and that Bailey's response was therefore admissible. On appeal, Bailey maintains both that he was detained the moment the investigator stepped inside his apartment to execute the warrant, and that the investigator's question was designed to elicit an incriminating response. We disagree, and conclude that the statement was properly admitted.

"*Miranda* warnings must be administered to an accused who is in custody and subject to interrogation or its functional equivalent." *State v. Troutman*, 300

Ga. 616, 617 (1) (797 SE2d 72) (2017) (citing *Phillips v. State*, 285 Ga. 213, 215 (2) (675 SE2d 1) (2009)). "A person is considered to be in custody and *Miranda* warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest." *Sewell v. State*, 283 Ga. 558, 560-561 (2) (662 SE2d 537) (2008) (citations and punctuation omitted). The problem for Bailey's argument is that he was never in custody — even if he was detained. To begin, the investigator's subjective view that Bailey may have been a suspect does not establish custody for purposes of *Miranda*. See *Sosniak v. State*, 287 Ga. 279, 281 (1) (695 SE2d 604) (2010). Instead, the familiar "reasonable person" standard applies: "Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary." *Sewell*, 283 Ga. at 561 (2) (citations and punctuation omitted).

Here, the objective circumstances surrounding Bailey's pre-arrest interaction with the investigator reveal that no reasonable person in Bailey's shoes would have perceived that he was in custody during the exchange. Bailey was in his own home, free to move about, and was not handcuffed or otherwise

8

restrained. And even assuming that Bailey's simple "yes" answer could be construed as an incriminating response, the investigator's question in these circumstances was not one that would cause a reasonable person to feel so restrained as to equate to a formal arrest. See, e.g., *Tolliver v. State*, 273 Ga. 785 (546 SE2d 525) (2001) (finding no *Miranda* violation where an officer responding to a report of shots fired engaged in a general on-the-scene questioning of the driver before taking the driver to the police station for formal interrogation). Accordingly, we affirm the trial court's conclusion that Bailey's statement was properly admitted.

IV.

Bailey's final contention is that the trial court erred when it declined to instruct the jury on voluntary manslaughter. In its order denying Bailey's motion for new trial, the trial court explained that there was no evidence of provocation that would authorize the requested instruction. Bailey contends that the trial court erred in refusing to give the instruction because there was some evidence that Martin provoked him before he stabbed her. On this point too we disagree,

9

because none of the evidence entered at trial suggests that a voluntary manslaughter charge could be supported.

To be sure, where any evidence would support a voluntary manslaughter charge, the instruction must be given: "When instructing the jury in a murder case, a trial court is required to grant the defendant's request for a charge on the lesser included offense of voluntary manslaughter if there is any evidence, however slight, to support such a charge. Whether such slight evidence exists is a question of law." *Blake v. State*, 292 Ga. 516, 518 (3) (739 SE2d 319) (2013) (citation omitted). And the necessary support for that charge is any evidence that "the defendant acted solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." *Johnson v. State*, 297 Ga. 839, 842 (2) (778 SE2d 769) (2015) (citation and punctuation omitted). To put it simply, words alone generally "are not sufficient provocation to excite the passion necessary to give rise to voluntary manslaughter." *Merritt v. State*, 292 Ga. 327, 331 (2) (737 SE2d 673) (2013) (citation and punctuation omitted). What's more, "[i]t is of no moment whether the provocation was sufficient to excite the deadly

10

passion in the particular defendant." *Lewandowski v. State*, 267 Ga. 831, 832 (2) (483 SE2d 582) (1997); OCGA § 16-5-2 (a). The reasonable person remains our barometer.

We thus evaluate the alleged provocation evidence with respect to its impact on a reasonable person, putting aside any peculiar response Bailey may have had. *Partridge v. State*, 256 Ga. 602, 603 (4) (351 SE2d 635) (1987) (rejecting the argument by the defendant, who was found guilty but mentally ill of murder, that "his fragile mental state" should be considered, "[i]n light of the fact that the legislature has prescribed an objective standard for determining when a defendant is entitled to a charge on voluntary manslaughter"); *Lewandowski*, 267 Ga. at 832 (holding that psychological evidence regarding the effect of the victim's conduct on the defendant's mental state at the time of the killing was properly excluded as irrelevant to a voluntary manslaughter defense).

The evidence at trial shows, at most, that Bailey and the victims had some sort of verbal confrontation about noise before he stabbed them. There is simply no evidence of a serious provocation that would give rise to a sudden, violent,

and irresistible passion in a reasonable person. See, e.g., *Johnson v. State*, 297 Ga. 839, 842-843 (778 SE2d 769) (2015) (no voluntary manslaughter charge was warranted in malice murder prosecution of defendant for killing his stepfather despite the fact that defendant alleged the two had an antagonistic relationship); *Gresham v. State*, 289 Ga. 103, 104 (3) (709 SE2d 780) (2011) (acknowledging that words alone are not sufficient provocation to excite the passion necessary to authorize a voluntary manslaughter charge); *Partridge*, 256 Ga. at 602 (fact that defendant and the victim engaged in an argument over radio tuning immediately prior to the crime was not sufficient to warrant a voluntary manslaughter charge). Accordingly, we conclude that the trial court did not err in refusing to give a voluntary manslaughter instruction under these circumstances.

Judgment affirmed. All the Justices concur.

Decided June 19, 2017.

Murder. DeKalb Superior Court. Before Judge Johnson.

Brandon Lewis, for appellant.

12

Sherry Boston, District Attorney, Gerald Mason, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.