312 Ga. 870
FINAL COPY

S21A1198.  DAVIS v. THE STATE.

PETERSON, Justice.

Jammie Rashad Davis appeals his convictions for murder and other crimes stemming from the 2018 shooting death of Latravius Burks.[1] Davis argues that (1) the evidence was insufficient to support his convictions because evidence showed that he acted in self-defense and (2) the trial court plainly erred in failing to instruct the jury on voluntary manslaughter. Davis's sufficiency claim fails

---

[1] The crimes took place on May 18, 2018. On July 3, 2018, a Dougherty County grand jury indicted Davis for malice murder, felony murder, aggravated assault, three counts of possession of a firearm during the commission of a felony, and three counts of cruelty to children in the third degree. He filed a motion for immunity from prosecution based on self-defense. The trial court held hearings on the motion but did not formally deny the motion until after the case was submitted to the jury, which found Davis guilty of all charges at a July 2019 trial. On August 5, 2019, the trial court sentenced Davis to life in prison for malice murder, a consecutive five-year term for one of the gun counts, and time served for the child cruelty counts. The trial court purported to merge all of the other counts, although actually the felony murder count was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 373 (5) (434 SE2d 479) (1993). On August 20, 2019, Davis filed a motion for new trial, which was amended on July 27, 2020. The trial court denied the motion in an order filed on May 21, 2021. Davis filed a timely notice of appeal, and the case was docketed to this Court's August 2021 term and submitted for decision on the briefs.

because the jury did not have to believe Davis's self-serving testimony that he was defending himself. And his claim of plain instructional error fails because the victim's touching of Davis's daughter's lips is not the kind of provocation that would have obviously required a voluntary manslaughter instruction. We affirm.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Davis, who went by "Shad," had a daughter, A. J., with Shavonda Jones. In May 2018, Jones was living with her boyfriend, Burks, in Dougherty County. Davis and Burks did not get along. On May 18, 2018, Davis went to visit his daughter, who was about three years old at the time, on the porch of the home of Jones and Burks. Burks arrived at the home during Davis's visit with his daughter. In the presence of Davis's daughter and Jones's two other minor children, K. J. and L. J., Davis shot at Burks at least 11 times, striking Burks at least seven times.

Police responding to the scene found Burks lying on the ground outside of his home, bleeding profusely from several gunshot

wounds, with the butt of a gun sticking out of his front pants pocket. A crime scene specialist determined that the gun had not been fired recently. At the scene, Burks told police that "Shad" had shot him. Burks later died of his multiple gunshot wounds, some of which were consistent with having been shot from behind.

The State presented eyewitness testimony from Jones's three young children that Davis shot Burks. One of the children, K. J., who was seven at the time of trial, testified that Burks was "playing with [the] lips" of Davis's daughter, A. J., before Davis punched, then shot, Burks. Another child, L. J., who was six at the time of trial, testified on cross-examination that he had said in a prior interview that Burks hit Davis first, and that he had merely heard, but not seen, the shooting; on redirect, however, L. J. testified that Davis "started fighting" first. Jones, who had been inside eating, testified that she heard several gunshots. The children ran into the house, and Jones heard Burks yell out. She went outside and found Burks lying on the ground, bleeding and gasping for breath. Davis's cell phone was on the porch, but Jones did not see Davis or the car in

3

which he had arrived.

A video recording of a police interview of Davis was admitted into evidence and played for the jury. Although it is difficult to understand Davis on the recording, he generally can be heard claiming that he shot Burks in order to protect himself. But one of the officers who conducted the interview testified that Davis did not say that he was scared or in fear for his life, that he saw a gun on Burks on the day of the shooting, or that Burks had threatened to shoot him on that day. The officer testified that Davis did recount a previous incident in which Burks threatened to shoot him.

Davis testified in his own defense. He testified about two altercations with Burks prior to the shooting. Davis testified that about a year earlier, Burks bumped into Davis at a convenience store. Davis asked Burks why he bumped into him, and Burks responded that he did not care who Davis was and that Burks was not afraid to shoot or fight. Davis also testified that about a month before the shooting, Burks pulled a gun on Davis while Davis was visiting his daughter and threatened to shoot Davis in the head. A

4

friend of Davis testified about these two encounters as well, claiming that he witnessed the first encounter and was on the telephone with Davis during the second encounter.

As to the fatal encounter, Davis testified that he shot Burks in self-defense. Davis claimed that he saw Burks retrieve a gun from his car and put it in his pocket before Burks approached the porch where Davis was visiting with his daughter. According to Davis, he objected when Burks "grabbed" Davis's daughter "on her face." Davis claimed that Burks said, "I already told you what I'd do," started "swinging on" him, and continued to attack him as Davis backed away down the steps of the porch. Davis testified that he was weakened by pneumonia and shot Burks to defend himself. Davis admitted that he did not see Burks "pull his gun" on Davis at any time during the incident.

1.  Davis was convicted of malice murder, possession of a firearm during the commission of a felony, and three counts of cruelty to children in the third degree. Contending that substantial evidence supported his claims of self-defense, he argues that the

evidence was insufficient to support his convictions. We disagree.

When evaluating the sufficiency of evidence, we must determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). In making that determination, "we view the evidence in the light most favorable to the verdict, and we put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the [jury]." *Wilkerson v. State*, 307 Ga. 574, 574 (837 SE2d 300) (2019) (citation and punctuation omitted). "As long as there is some competent evidence, even if contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." *Scott v. State*, 309 Ga. 764, 766 (1) (848 SE2d 448) (2020) (citation and punctuation omitted).

Here, eyewitnesses testified that Davis shot Burks. Indeed, Davis admitted shooting Burks. Although Davis claimed that he did so in self-defense, the jury was free to reject that testimony. Davis

admitted that he did not see Burks pull a gun during the incident, and evidence showed that the gun found in Burks's pocket had not been fired recently. Moreover, when interviewed by officers, Davis did not say that Burks had threatened to shoot him on the day of the shooting. After assessing the credibility of the witnesses and other evidence, the jury was authorized to reject any claims that Davis shot Burks in self-defense and find beyond a reasonable doubt that Davis was guilty of the crimes of which he was convicted. See *Corley v. State*, 308 Ga. 321, 322 (1) (a) (840 SE2d 391) (2020) ("[Q]uestions about the existence of justification are for a jury to decide . . . [,] and . . . [t]he jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense.") (citation and punctuation omitted).[2]

2. Davis also argues that the trial court committed plain

___

[2] The convictions for child cruelty in the third degree were premised on allegations that Davis intentionally allowed Jones's three children to witness his assault on Burks. See OCGA § 16-5-70 (d) (1). In challenging the sufficiency of the evidence to support his convictions, however, Davis argues only that substantial evidence supported his defense that his actions were justified, a defense we have held that there was sufficient evidence for the jury to reject. Davis has not otherwise shown that the evidence supporting the child cruelty convictions was insufficient as a matter of constitutional due process.

7

error in failing to charge on voluntary manslaughter. Again, we disagree.

Davis made a written request for a jury charge on voluntary manslaughter, arguing at the charge conference that he was provoked by Burks's touching the face of Davis's daughter in his presence. But Davis did not object to the omission of the charge after the trial court instructed the jury. "[T]he failure to object to the charge as given precludes appellate review 'unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.'" *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) (quoting OCGA § 17-8-58 (b)); see also *Williams v. State*, 306 Ga. 717, 720 (2) (832 SE2d 805) (2019). Where an alleged error regarding a jury instruction is not affirmatively waived, reversal may be authorized under plain error review, but only if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. See *Morris v. State*, 303 Ga. 192, 197 (V) (811

8

SE2d 321) (2018). Davis's claim fails because there was no obvious error in the trial court's refusal to give a voluntary manslaughter instruction.

"[E]ven slight evidence showing that the victim seriously provoked the defendant requires the trial court to give a requested charge on voluntary manslaughter." *Dugger v. State*, 297 Ga. 120, 124 (7) (772 SE2d 695) (2015) (citation and punctuation omitted). Davis argues on appeal that there was evidence that he was seriously provoked, such that a voluntary manslaughter charge should have been given, in that Burks touched the lips of Davis's three-year-old daughter, then started attacking him. But an error is plain only "if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point." *Walter v. State*, 304 Ga. 760, 767 (3) (b) (822 SE2d 266) (2018) (citation and punctuation omitted); see also *Franklin v. State*, 306 Ga. 872, 876 (2) (834 SE2d 53) (2019). Davis "cites no precedent requiring [a voluntary manslaughter] instruction under circumstances similar to those presented here." *Walter*, 304 Ga. at 767 (3) (b). And we have

found none. Molestation or similarly improper touching of a defendant's minor child might in some cases create the sort of serious provocation that merits a voluntary manslaughter charge. See *Scott v. State*, 291 Ga. 156, 157-158 (2) (728 SE2d 238) (2012) (trial court erred by not instructing on voluntary manslaughter where there was evidence that the victim taunted the defendant about molesting the defendant's niece just before the shooting). But it is not at all obvious that the apparently brief, non-sexual touching of Davis's daughter by Burks rose to this level of provocation.

Moreover, where there is a question of self-defense, a charge on voluntary manslaughter is warranted only where there is evidence showing that the accused was so excited that he "reacted passionately rather than simply in an attempt to defend himself." *Jackson v. State*, 301 Ga. 878, 880 (2) (804 SE2d 357) (2017) (citation and punctuation omitted). "[N]either fear that someone is going to pull a gun nor fighting are the types of provocation which demand a voluntary manslaughter charge." *Smith v. State*, 296 Ga. 731, 737 (3) (770 SE2d 610) (2015). Evidence that Burks was "swinging on"

10

Davis, even coupled with evidence that Burks touched Davis's daughter, did not obviously require a voluntary manslaughter instruction. Therefore, the trial court did not plainly err in failing to give that instruction.

*Judgment affirmed. All the Justices concur.*

Decided November 23, 2021.

Murder. Dougherty Superior Court. Before Judge Lockette.

*Conger & Smith, Gregory D. Smith*, for appellant.

*Gregory W. Edwards, District Attorney, M. April Wyane, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.