315 Ga. 814
FINAL COPY

S23A0377.  BEHL v. THE STATE.

PETERSON, Presiding Justice.

Edward Behl appeals convictions for felony murder and a weapons charge stemming from the death of Joseph Billings, a fellow resident of a homeless encampment.[1] Behl argues for a new trial on the grounds that (1) the trial court plainly erred in not charging the jury on voluntary manslaughter, and (2) Behl was unable to view digital discovery while incarcerated and while exercising the right to self-representation. We conclude that the trial

---

[1] The crimes took place on January 10, 2017. A Chatham County grand jury returned an indictment against Behl on March 29, 2017, charging Behl with malice murder, felony murder, aggravated assault, and two counts of possession of a knife during the commission of a felony. At an October 2019 trial, a jury found Behl not guilty of malice murder but guilty of all other counts. The trial court on October 16, 2019, sentenced Behl to life in prison for felony murder and a five-year consecutive, probated sentence for one of the weapon counts; the other counts merged. Behl filed a motion for new trial on October 24, 2019, that was amended by appellate counsel on October 29, 2021. Following a hearing, the trial court denied the motion in an order entered on October 21, 2022. Behl filed a timely notice of appeal. The case was docketed to this Court's term beginning in December 2022 and submitted for consideration on the briefs.

court did not plainly err in failing to charge the jury on voluntary manslaughter, and that Behl did not preserve the issue of access to discovery. Accordingly, we affirm.

The evidence at trial showed that Behl moved into a homeless encampment in Chatham County in January 2017. On the evening of January 9, 2017, Behl, Billings, and other residents of the camp were drinking beer by a campfire. Later that night, Behl was observed touching Billings's penis and kissing him, while Billings was passed out.

The next morning, another encampment resident informed Billings about what had happened the previous night. Billings and Behl engaged in a physical altercation as a result, but other residents were able to separate the two. Behl moved to another location nearby.

Billings and another resident twice left the camp and went to the store that day. When Billings and the other resident returned to the camp the second time, they encountered Behl. Billings and Behl began to argue again about the previous evening, swearing and

calling each other names. Behl convinced Billings to come to Behl's tent, then fatally stabbed Billings in the neck.

1. Behl argues that the trial court plainly erred in failing to instruct the jury on voluntary manslaughter. We disagree.

Behl requested a jury charge on voluntary manslaughter. At the charge conference, the trial court indicated it was disinclined to give such an instruction, citing "a substantial cooling-off period." The trial court ultimately did not give the voluntary manslaughter charge, although it did give instructions on justification and self-defense. Behl's only objection to the jury charge at the time that it was given was "the failure to charge my *involuntary*." (Emphasis supplied.)[2]

Behl concedes on appeal that failure to object to the omission of an instruction on voluntary manslaughter from the charge as given means that we review that omission from the instruction only for plain error. See *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) ("[T]he failure to object to the charge as given precludes

---

[2] Behl also had requested an instruction on involuntary manslaughter.

appellate review 'unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.'" (quoting OCGA § 17-8-58 (b))). Under plain error review, we can reverse only if the trial court made a clear or obvious error that was not affirmatively waived, likely affected the outcome of the proceedings, and seriously affects the fairness, integrity, or public reputation of judicial proceedings. See *Morris v. State*, 303 Ga. 192, 197 (V) (811 SE2d 321) (2018). Behl's claim fails because there was no obvious error in failing to charge on voluntary manslaughter.

"Even slight evidence showing that the victim seriously provoked the defendant requires the trial court to give a requested charge on voluntary manslaughter." *Dugger v. State*, 297 Ga. 120, 124 (7) (772 SE2d 695) (2015) (citation and punctuation omitted). Behl argues that a voluntary manslaughter instruction was justified by the "heated arguments and physical beatings" that preceded the stabbing, such that Behl "had a reasonable fear of some danger from" Billings. But "neither fear that someone is going to pull a [weapon] nor fighting are the types of provocation [that] demand a

4

voluntary manslaughter charge." *Smith v. State*, 296 Ga. 731, 737 (3) (770 SE2d 610) (2015). And "it is well established that words alone, regardless of the degree of their insulting nature, will not in any case justify the excitement of passion so as to reduce the crime from murder to manslaughter [when] the killing is done solely on account of the indignation aroused by use of opprobrious words." *Hudson v. State*, 308 Ga. 443, 446 (2) (a) (841 SE2d 696) (2020) (citation, punctuation, and emphasis omitted). Moreover, "[t]o warrant a jury charge on voluntary manslaughter, there must be at least slight evidence that the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself." *Collins v. State*, 312 Ga. 727, 739 (6) (864 SE2d 85) (2021) (citation and punctuation omitted). Here, Behl offers no evidence that Behl "was angry or mad or . . . had any other response showing [Behl] might have reacted passionately" as opposed to acting based on fear or in self-defense. See id. at 740 (6).

Behl argues that a voluntary manslaughter instruction was required because the jury "could have inferred that the name calling,

heated arguments, and physical beatings[ ] were a result of a fundamental element of . . . Behl's identity — homosexuality." But Behl points to no evidence that Billings made any particular remarks or slurs targeting Behl's sexual orientation.[3] Moreover, "an error is plain only if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point." *Davis v. State*, 312 Ga. 870, 874 (2) (866 SE2d 390) (2021) (citation and punctuation omitted). Behl "cites no precedent requiring a voluntary manslaughter instruction under circumstances similar to those presented here. And we have found none." Id. (citation and punctuation omitted); cf. *Collins*, 312 Ga. at 740 (6) (no error in denying request for voluntary manslaughter instruction where defendant testified that victim called him a "mother f***er" to his face, threatened to kill him, and pulled a handgun on him, but "never testified that he was angry or mad or that he had any other response showing he might have reacted passionately — only that

---

[3] We note that although Behl was identified in the trial transcript as "Ms. Behl" and uses female pronouns in briefing before this Court, Behl frames this argument in terms of sexual orientation, not gender identity.

6

he was scared and was defending himself (as well as [a co-defendant])"); *Hudson*, 308 Ga. at 446 (2) (a) (no error in denying request for voluntary manslaughter instruction based on evidence that the victim called the defendant a "mother f***er" shortly after the death of the defendant's mother).[4] It was not at all obvious that a voluntary manslaughter instruction was required on this record. Therefore, the trial court did not plainly err in failing to give one.

2.    Behl also argues that the Georgia constitutional right to due process was violated when, while acting pro se, Behl was prevented from viewing discovery due to being incarcerated.[5] We conclude that this claim of error was not preserved.

---

[4] The cases Behl cites in which a Georgia appellate court found error in a refusal to give a voluntary manslaughter charge involved facts unlike this case. See *Woody v. State*, 262 Ga. 327, 328 (2) (418 SE2d 35) (1992) (shooting occurred "within seconds" of fight in which victim had beaten defendant to the point where defendant "twice begged for his life"); *Washington v. State*, 249 Ga. 728, 730-731 (3) (292 SE2d 836) (1982) (victim had cut defendant's son, leaving son hospitalized, and victim in the presence of defendant was making taunts and threatening the life of defendant's son).

[5] To the extent Behl claims a denial of the right to self-represent "effectively," there is no such right. See *Williams v. State*, 298 Ga. 538, 540 (3) (783 SE2d 594) (2016) ("[W]hen a criminal defendant elects to represent himself[,] he will not thereafter be heard to assert a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein he was counsel." (citation and punctuation omitted)).

Charged with malice murder and other offenses, Behl was represented by the public defender's office until about two months before trial, when counsel successfully moved to withdraw and Behl was given permission by the court to self-represent. The record indicates that, prior to counsel withdrawing, the State provided to Behl's counsel a number of discs containing digital evidence, including photographs, police body-worn camera footage, and audio- and/or video-recorded statements, filing those items with the trial court. At the August 6, 2019 hearing pursuant to *Faretta v. California*, 422 U.S. 806 (95 SCt 2525, 45 LE2d 562) (1975), the trial court warned Behl that Behl was "not going to get any extra time to prepare" and would "have less of a chance to investigate things and research [Behl's] case in advance" by proceeding pro se. During a discussion about a prior case of Behl's that the State planned to introduce for sentencing purposes, the public defender represented that "[i]f it's a question as to prior representation, I believe I have that information and I can provide that to [Behl] through discovery." The public defender then represented that he would give Behl "all of

8

the discovery," upon which the trial court asked Behl whether Behl was "comfortable knowing you're going to get all of that information and have access to it through all of the discovery materials," and Behl responded, "Yeah, once I get the replacement copy." When Behl asked about what options might be available in the event that Behl were not provided necessary resources, the trial court responded, "If you feel like you're being denied resources that you're constitutionally entitled to, then you can file a motion in that respect." In an order entered on September 20, 2019, the trial court directed the sheriff, his deputies, and the staff at the Chatham County Detention Center to give Behl "priority access to the law library and legal research materials at the jail" so that Behl could prepare for trial.

A brief in support of the amended motion for new trial filed by appellate counsel claimed that, after electing self-representation, Behl was unable to review any of the discs provided in discovery. The brief also represented that "[t]he Chatham County Detention Center does not permit pro se inmates to review discovery contained

9

on DVDs and CDs." For this proposition, the brief cited an attached document purportedly approved by the Chatham County sheriff that does not appear to address whether pro se defendants may examine such materials.[6] A hearing on the motion was held, but Behl introduced no evidence.

The trial court denied the motion for new trial, finding that "the bulk of" the State's discovery was disclosed to Behl on August 16, 2017, nearly two years before Behl elected self-representation, such that Behl was able to review the materials with prior counsel. The trial court noted that Behl acknowledged awareness of the discovery at the *Faretta* hearing. The trial court stated that the Chatham County jail "does not allow inmates to review discovery contained on DVDs or CDs" but noted that in other cases the court had permitted pro se defendants to view video recordings provided in discovery in open court as part of their trial preparation. The

---

[6] Part of the document appears to have been cut off in the copy in the Court's record, possibly due to a poor photocopying job. But as explained below, our resolution of this enumeration does not depend on the contents of the policy.

10

court also wrote that the paper discovery materials in Behl's possession referenced the digital materials, yet Behl did not ask the court for assistance in reviewing them.

Behl claims that the inability to review all of the discovery materials while self-represented and incarcerated amounted to a due process violation. The State argues that this claim fails for various reasons, including that the claim is untimely, that Behl has not shown that any state action caused any inability to review discovery materials, and that Behl has not demonstrated prejudice from any such inability. Without reaching the merits of Behl's claim, we agree that this claim was waived.[7]

The Georgia Constitution provides that "[n]o person shall be deprived of life, liberty, or property except by due process of law." Ga. Const. of 1983, Art. I, Sec. I, Par. I. But a due process claim such

---

[7] Although we do not reach the merits of whether any denial of access to discovery violated Behl's constitutional rights, we note that some of us are concerned about the possibility — apparently accepted as true by the trial court — that a jail would as a matter of policy categorically deny a self-represented inmate access to all digital discovery materials, including materials the possession of which is not generally proscribed by law.

11

as this must be asserted in a timely fashion. See *Benton v. State*, 300 Ga. 202, 205 (2) (794 SE2d 97) (2016) ("Of course, a criminal defendant may forfeit a constitutional right by failing to timely assert it."); *Scudder v. State*, 298 Ga. 438, 440 (2) (782 SE2d 638) (2016) (defendant waived due process claim based on judge meeting privately with a witness, where defense raised no objection when judge announced that he was leaving courtroom to speak with witness in chambers, and defense failed to ask court reporter to reveal what had been said in private). Here, Behl points to no instance prior to or during trial in which Behl raised with the State or the trial court any issue with the ability to access the materials in question, and we have found none in the record. Behl filed no motion seeking access to the materials — despite the trial court having explained to Behl that filing a motion was an option if Behl were denied necessary resources. Behl did not seek a continuance to review the materials in the courtroom. Behl did not object to the admission of any testimony or other evidence — including photographs and the one digital recording, body-worn camera

12

footage, that was admitted at trial — on the basis that Behl had not been able to review any digital materials. And Behl does not contest the trial court's finding that Behl was aware that the materials had been provided in discovery. Indeed, the record shows that the State filed a list of "all discoverable material," including references to audio and video recordings, with the trial court on August 16, 2017, nearly two years before Behl was granted the ability to proceed pro se.

Under these circumstances, we conclude that Behl waived any claim of a violation of due process based on any inability to access the materials in question. Cf. *Williams v. State*, 298 Ga. 538, 542 (7) (783 SE2d 594) (2016) ("We find no support in the record to support appellant's assertion that the trial court refused to allow him to subpoena witnesses for the motion for new trial hearing. In fact, the record shows that appellant was given the opportunity to subpoena witnesses for that hearing but that having elected to proceed pro se, he simply failed to take the steps to ensure the presence of his witnesses."); *State v. Dickerson*, 273 Ga. 408, 411 (2) (542 SE2d 487)

(2001) (finding waiver of right to assert error under criminal discovery statute given defendant's failure to seek a continuance; "Generally a defendant has a duty to request a continuance to cure any prejudice which may have resulted from the State's failure to comply with the requirements of OCGA § 17-16-1 et seq."); *Sheppard v. State*, 297 Ga. App. 806, 812 (3) (678 SE2d 509) (2009) (rejecting argument that pro se defendant was deprived of constitutional right to compel attendance of witnesses; "The record does not disclose that Sheppard ever requested issuance of subpoenas or the trial court's assistance in enforcing them, and, as such, his right to compulsory process was not violated. To the extent Sheppard is arguing that the trial court should have continued his trial to allow him to subpoena witnesses, his claim is barred because he never moved for a continuance.").

*Judgment affirmed. All the Justices concur.*

MCMILLIAN, Justice, concurring.

I am writing to make clear that I do not share the same concern expressed in footnote 7 of the opinion, which provides:

> Although we do not reach the merits of whether any denial of access to discovery violated Behl's constitutional rights, we note that some of us are concerned about the possibility — apparently accepted as true by the trial court — that a jail would as a matter of policy categorically deny a self-represented inmate access to all digital discovery materials, including materials the possession of which is not generally proscribed by law.

As an initial matter, I do not construe the record as a categorical denial of access to digital materials. As stated by the trial court, upon request, pro se defendants were allowed to view video recordings provided in discovery in open court as part of their trial preparation.

To the extent that members of the Court are expressing concern that the jail did not provide a DVD player, CD player, or computer to review the digital materials in the jail, I am not aware of any authority for this Court to require a jail or prison to fund and provide certain equipment for use by pro se defendants. "Meaningful

15

access [to the courts] means that state authorities must ensure that inmates have a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. . . ." *Gibson v. Turpin*, 270 Ga. 855, 858 (1) (513 SE2d 186) (1999) (punctuation omitted) (such access "does not mean that a state must help inmates discover grievances, or litigate effectively when in court"), citing *Lewis v. Casey*, 518 U.S. 343, 356 (II) (B) (116 SCt 2174, 135 LE2d 606) (1996). See also *Blaine v. State*, 305 Ga. 513, 520 (3) (826 SE2d 82) (2019) (citing *Gibson*). However, meaningful access does not guarantee any "particular methodology but rather the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356 (II) (B). Again, if the jail policy was to allow pro se defendants to use the trial court's equipment to review digital materials upon request, I do not see a concern with that policy.

Otherwise, I concur fully in the Court's opinion. I am authorized to state that Justice LaGrua joins in this concurrence.

Decided March 7, 2023.

Murder. Chatham Superior Court. Before Judge Karpf.

*Amanda J. Walker*, for appellant.

*Shalena Cook Jones, District Attorney, Bryan M. Roy, Bonnie L. Jones, Timothy P. Dean, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.