NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 19, 2023

S23A1078. JIVENS v. THE STATE.

PETERSON, Presiding Justice.

Laquan Hasuan Jivens appeals his convictions for malice murder and possession of a firearm during the commission of a felony in connection with the May 7, 2016 shooting death of Kathy Henry.[1] On appeal, Jivens asserts that the trial court erred by (1)

---

[1] The crimes related to Henry's death occurred in May 2016. In March 2017, a Chatham County grand jury indicted Jivens for various crimes related to the armed robbery of Bernie Edwards and for six counts relating to the murder of Henry: malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault (Count 3), and three counts of possession of a firearm during the commission of a felony (Counts 4 to 6). At an April 2019 trial, the jury found Jivens guilty of all counts related to Henry (Counts 1 to 6) and acquitted Jivens of all counts related to Edwards. The felony murder count (Count 2) was vacated by operation of law, and the trial court sentenced Jivens to life in prison for malice murder (Count 1), 20 years to serve concurrent for aggravated assault (Count 3), and three consecutive terms of five years for possession of a firearm during the commission of a felony (Counts 4 to 6). Jivens timely moved for a new trial with new counsel, amending the motion once. On May 12, 2023, after a hearing, the trial court denied Jivens's motion for new trial but merged Count 3 with Count 1 and merged Counts 5 and 6 with Count 4. The trial court entered an amended sentencing order reflecting a sentence of life in prison with the possibility of

failing to instruct the jury on the lesser offense of voluntary manslaughter, (2) admitting photographs of model firearms and of Jivens with firearms, (3) denying his motion for mistrial after the State elicited testimony of his potential gang affiliation, (4) granting the State's motion in limine excluding evidence of Henry's drug use, and (5) denying his motion for mistrial based on the State's allegedly improper closing arguments. We affirm because (1) the trial court did not err in failing to give a voluntary manslaughter charge because the evidence did not support such a charge, (2) it is highly probable that any error in admitting the firearm-related photographs did not contribute to the verdict, (3) Jivens did not preserve for appellate review the issue related to evidence of gang affiliation, (4) the trial court did not abuse its discretion in excluding evidence of Henry's drug use, and (5) Jivens waived any objection to the State's alleged improper arguments.

---

parole for malice murder with one term of five years to serve consecutively for possession of a firearm during the commission of a felony. Jivens filed a timely notice of appeal. The case was docketed to the August 2023 term of this Court and submitted for consideration on the briefs.

At trial, the jury heard evidence from (1) Henry's fiancé who was on the phone with Henry before the shooting, (2) a neighbor who witnessed the shooting, (3) another neighbor who saw and overheard Jivens shortly after the shooting, and (4) an audio recording of Jivens's girlfriend, Tyresha Humphries, detailing the shooting.

First, Henry's fiancé testified that, on the night of the shooting, Henry called him. He overheard young people arguing and heard Henry say a young male was "beating up on his girlfriend[.]"Henry's phone records showed that she called her fiancé immediately before the shooting.

Similarly, one neighbor testified that he saw Jivens and Humphries arguing outside when Henry came "out of nowhere" and pushed Jivens. Henry did not say anything during the encounter, but Jivens asked Henry, "You think I'm f**king playing?" This neighbor saw Jivens attempt to fire a gun twice before shooting Henry in the chest the third time he fired. The neighbor described the gun as a chrome, semi-automatic gun with a brown handle, identified Jivens as the shooter in court, identified a picture of

Humphries as the female he saw argue with Jivens, and identified a picture of Jivens's house as the place where the pair went after the shooting.

Another neighbor testified that she saw Jivens and Humphries shortly after the shooting, and she overheard Jivens say he "done told her about getting in their business" while putting something in his pants. This neighbor failed to identify Jivens in the first police photographic lineup but identified a more recent picture of Jivens in the second police photographic lineup as the male she saw, and she identified Humphries as the female she saw with Jivens on the night of the shooting.

Although Humphries claimed at trial that she and Jivens stayed in on the night of the shooting, the jury heard a recorded interview where Humphries narrated a different series of events leading up to the shooting. In this account, Jivens and Humphries were arguing when Henry approached them; Henry, Jivens, and Humphries exchanged words, and Henry pushed them. Henry repeatedly asked them "[w]hat's up with you[,]" accused Humphries

4

of taking her money, and "called [Humphries] a B or P-*-*-S-Y" while Jivens insisted, "I'm talking to my girl" and told Henry to "go head on." Jivens pulled a gun from his pants. Humphries first described the gun as black and later described it as black and silver. Henry dared Jivens to kill her, saying, "come on, kill me," while Jivens continued to tell Henry to "get out [of his] face." Humphries described how Jivens unsuccessfully attempted to fire the gun, she tried to stop him, and she began to walk away when she heard a gunshot. After Jivens shot Henry, Henry stood holding her arm as Jivens and Humphries walked away.

Additionally, a police officer testified that he discovered Henry's body at the crime scene with a blood spot on her left arm. Police also observed a "fairly fresh" shoe tread pattern around 12 inches long and a .40-caliber shell casing. The State presented evidence recovered while executing a search warrant of Jivens's house: clothing that matched depictions of what Jivens wore on the night of the shooting, a hat with a "fair amount" of gunshot residue, and shoes, which measured over 11 inches long, with treads similar

5

to those found at the crime scene. Further, an internet search history from Jivens's cell phone records revealed that someone using that phone searched for and clicked on an article related to Henry's death in the early morning of May 9.

1. Jivens argues on appeal that the trial court erred by declining to give a voluntary manslaughter instruction. We conclude that the trial court did not plainly err in declining this charge.

Jivens requested a jury charge on voluntary manslaughter. At the charge conference, the trial court rejected Jivens's request and reasoned that pushing did not rise to the level of provocation necessary to warrant such a charge. After the trial court gave instructions to the jury, Jivens did not object to the court's omission of the voluntary manslaughter charge.

An objection voiced at the charge conference does not preserve for ordinary appellate review a party's objection to the charge as subsequently given. See *Behl v. State*, 315 Ga. 814, 815 (1) (885 SE2d 7) (2023) (citing *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012)). Rather, to preserve an objection to a jury charge for ordinary

appellate review, the defendant must restate his objection after the court gives its instructions and before the jury retires to deliberate. See *Blake v. State*, 292 Ga. 516, 518 (3) (739 SE2d 319) (2013). A party's failure to object to the instruction *as given*, or to the omission of an instruction, precludes appellate review of the instruction "'unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.'" *White*, 291 Ga. at 8 (2) (quoting OCGA § 17-8-58 (b)). Given Jivens's failure to object after the instruction was given, we review the trial court's omission of the voluntary manslaughter instruction only for plain error.

"Under plain error review, we can reverse only if the trial court made a clear or obvious error that was not affirmatively waived, likely affected the outcome of the proceedings, and seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Behl*, 315 Ga. at 815-816 (1). Jivens's claim fails because there was no clear or obvious error in the trial court's refusal to give a voluntary manslaughter charge.

Voluntary manslaughter is committed when a person causes

the death of another "under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" OCGA § 16-5-2 (a). Under this objective standard, "[t]he reasonable person remains our barometer" in this analysis, and we "put[] aside any peculiar response [the defendant] may have had." *Bailey v. State*, 301 Ga. 476, 480 (IV) (801 SE2d 813) (2017).

"Even slight evidence showing that the victim seriously provoked the defendant requires the trial courts to give a requested charge on voluntary manslaughter." *Dugger v. State*, 297 Ga. 120, 124 (7) (772 SE2d 695) (2015) (citations and punctuation omitted). But there is a difference between slight evidence of serious provocation and evidence — even strong evidence — of lesser provocation. A voluntary manslaughter charge is required only when there is at least slight evidence that "the defendant acted solely as the result of a sudden, violent, and irresistible passion resulting from *serious* provocation sufficient to excite such passion

8

in a reasonable person." *Bailey*, 301 Ga. at 480 (IV) (emphasis supplied; citation and punctuation omitted). Although Jivens contends that Henry's pushing and shoving him provoked him into the shooting, Jivens makes no argument that this is the type of serious provocation that would excite the passions of a reasonable person.

Instead, Jivens argues the evidence required a voluntary manslaughter charge because Henry was a "large[r]" woman[2] who appeared to be under the influence and stumbling when she pushed Jivens and Humphries, accused Humphries of stealing money, and dared Jivens to kill her.

But neither mere words, nor fear for one's safety, nor fighting are the types of provocation that demand a voluntary manslaughter charge. See *Behl*, 315 Ga. at 816 (1); see also *Johnson v. State*, 313 Ga. 698, 700 (873 SE2d 123) (2022) (evidence of heated argument between defendant and victim, who approached the house of

---

[2] The autopsy revealed Henry was five feet, six inches tall, and weighed 184.8 pounds.

defendant's mother uninvited and did not leave when requested, did not warrant a voluntary manslaughter charge); *Hudson v. State*, 308 Ga. 443, 446 (2) (a) (841 SE2d 696) (2020) ("[The victim's] use of a crude phrase, no matter how offensive to [the defendant], was still only words; [the defendant's] violent reaction to those words does not change the fact that they were only words."); *Bailey¸* 301 Ga. at 481 (IV) (evidence of a verbal confrontation was not a serious provocation giving rise to a sudden, violent, and irresistible passion in reasonable person); *Johnson v. State*, 297 Ga. 839, 843 (2) (778 SE2d 769) (2015) (evidence of antagonistic relationship involving physical confrontations between victim and defendant did not require a voluntary manslaughter charge).

On this record, it was neither clear nor obvious that a voluntary manslaughter charge was required. Therefore, the trial court did not plainly err in failing to give one.

2. Jivens argues on appeal that the trial court erred in admitting demonstrative photographs of two model firearms that could have been used in the shooting and photographs of him with

10

firearms. Without deciding whether the trial court erred, we conclude that any error was harmless.

Over Jivens's objections, the trial court showed two demonstrative photographs of model firearms and admitted photographs depicting him (1) with a gun in his lap, (2) leaning while holding two guns, (3) pointing an imaginary gun at the camera with a gun in his lap, (4) hand gesturing with a gun in his lap, (5) pointing a gun, (6) holding up five fingers with a gun in his lap, and (7) standing with two guns. Detectives mentioned these photographs in the recorded interview with Humphries, in trial testimony about the similarity between the model guns and guns in photographs of Jivens, and in trial testimony noting similarities between clothes in the photographs and what Humphries said Jivens was wearing on the night of the shooting. Jivens and Humphries also discussed photographs of him holding two guns in jail calls played for the jury. And the State referenced these photographs in questioning Humphries at trial and in closing argument.

On appeal, Jivens contends the trial court erred in admitting

11

these photographs because they were (1) irrelevant and thus inadmissible because they had no connection to the case, and (2) improper character evidence establishing Jivens's propensity for violence as he was a minor carrying a firearm,[3] and because (3) any probative value of the evidence was substantially outweighed by the risk of unfair prejudice under OCGA § 24-4-403.

A trial court's evidentiary error warrants reversal only if it was harmful. See *Thomas v. State*, 314 Ga. 681, 686 (1) (c) (878 SE2d 493) (2022). "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Anglin v. State*, 302 Ga. 333, 341 (6) (806 SE2d 573) (2017) (citation and punctuation omitted). In conducting that analysis, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done instead of viewing it in the light most favorable to the jury's verdict. See *Morrell v. State*, 313 Ga. 247, 261 (2) (c) (869 SE2d 447) (2022).

Here, the State presented strong evidence of Jivens's guilt. The

---

[3] At the time of the shooting, Jivens was 16 years old.

jury heard testimony from three witnesses and a recorded interview which established a similar narrative. Henry's fiancé testified that on the night of the shooting he heard a young couple arguing in the background of the phone call and Henry say a young male was "beating up on his girlfriend." Henry's phone records show that she called her fiancé minutes before the shooting. One neighbor corroborated this, testifying that he saw a young couple argue, Henry "come out of nowhere[,]" Henry push Jivens, and Jivens shoot Henry. This neighbor identified Jivens in court and described the gun, how Jivens attempted to fire twice before shooting Henry in the chest the third time he fired, and how Jivens and Humphries walked towards Jivens's house after the shooting. Another neighbor identified Jivens and Humphries and testified that she saw them shortly after the shooting. This neighbor heard Jivens say he "done told her about getting in their business" as he put something in his pants. Moreover, the jury heard Humphries's entire recorded interview in which she detailed how Jivens unsuccessfully fired the gun, she tried to get him to stop, and she was walking away when

13

she heard the gunshot.

Also, the State presented evidence corroborating these eyewitness accounts. The State presented an audio recording where, although Jivens disclaimed having anything to do with the murder, Jivens confirmed that he and Humphries were arguing at the time. Further, the autopsy revealing the cause of death as a gunshot wound to the chest with a reentry to the arm and testimony from a police officer who observed a blood spot on Henry's left arm at the crime scene both corroborated Humphries's account that she saw Henry holding her arm after the shooting. The State also presented evidence recovered during a search of Jivens's house: clothes matching depictions of what witnesses saw Jivens wear the night of the shooting, a hat with a "fair amount" of gunshot residue, and shoes that measured over 11 inches and had similar treads to those pictured at the crime scene. Further, the internet search history from Jivens's cell phone records supported an inference that he searched for and read an article related to Henry's death in the early morning of May 9.

Moreover, any prejudicial effect these photographs may have had was minimized by properly admitted evidence that Jivens, in fact, had access to guns. See *Young v. State*, 309 Ga. 529, 537, 538 (3) (847 SE2d 347) (2020). To that end, the jury heard about Jivens having guns in the recorded interview with Humphries, jail calls between Jivens and Humphries, and Humphries's trial testimony.

Given the compelling evidence of Jivens's guilt and the limited prejudicial effect from the photographs, it is highly probable that any error in admitting these photographs did not contribute to the verdict. See *Young*, 309 Ga. at 538 (3) (any error in admitting photograph depicting defendant with a gun was harmless under circumstances of case, given the strength of the evidence); *Lofton v. State*, 309 Ga. 349, 357-358 (3) (b) (846 SE2d 57) (2020) (any error in trial court's admission of photographs depicting defendant with guns was harmless given various factors including the strong evidence of defendant's guilt as a party to the crime); *Robinson v. State*, 308 Ga. 543, 551-552 (2) (b) (ii) (842 SE2d 54) (2020) (admission of video without "the remotest shred of relevance" was

15

harmless in light of the compelling evidence of the defendant's guilt and the minor role the video played in the State's case).

3. Jivens contends the trial court erred in denying his motion for mistrial after the State elicited evidence of Jivens's potential gang affiliation. Jivens failed to preserve this issue for appellate review.

The State elicited the contested evidence during the State's direct examination of a detective.

> Q: … Now, based on this, are you aware of the tattoos that the Defendant had, what significance they have in relation to him using the name as Muddy?
>
> A: Yes.
>
> Q: Okay. What in — what — why does that matter?
>
> A: So the neighborhood where he lives in Edgemere Sackville, there's a group that exist[s] there. They call themselves Five Five Mob or Muddy Mob. And so he refers to himself as Muddy Quan, and that's the significance of the Five Five tattoos. It[']s a designation identifying the group that he considers — considers himself to be a part of.

Jivens moved for a mistrial, contending that the State injected bad character evidence about Jivens's potential gang association,

which the trial court had already excluded in another evidentiary dispute during trial. The State maintained that this information linked Jivens to the use of the name "Muddy," which connected Jivens to an extraction of his cell phone records and also was relevant to identify Jivens in a Facebook photograph in which Jivens had a gun in his lap, similar to the gun described by a witness as being used in the murder relatively close in time to the date of the shooting.

The trial court agreed that information about the referenced neighborhood's association "with certain groups that this Defendant may be associated with" was "completely non[-]necessary" to connect Jivens with the phone extraction. The trial court warned the State, outside the jury's presence, to "stay away from that" information. However, the trial court denied the motion for mistrial and, instead, gave a curative instruction.

Jivens failed to renew the motion for mistrial following the trial court's curative instruction, and thus, he has waived the issue on appeal. See *Hartsfield v. State*, 294 Ga. 883, 886 (2) (757 SE2d 90)

17

(2014) (defendant failed to preserve issue for appellate review by failing to renew motion for mistrial after court administered its curative instruction). Accordingly, this enumeration leaves nothing for us to review.

4. Jivens argues the trial court abused its discretion by granting the State's motion in limine to exclude evidence that Henry had cocaine in her system at the time of the shooting. Jivens contends this evidence would have been relevant both (1) to help show the provocation required for a voluntary manslaughter charge and (2) to corroborate Humphries's testimony. We conclude that the trial court did not abuse its discretion in excluding this evidence.

As an initial matter, we have consistently held under the current Evidence Code that a victim's toxicology report is irrelevant and inadmissible when the defendant fails to show how any alcohol or drugs in the victim's system tended to affect the victim's behavior. See *Ivey v. State*, 305 Ga. 156, 162-163 (2) (d) (824 SE2d 242) (2019); *Mondragon v. State*, 304 Ga. 843, 845-846 (3) (823 SE2d 276) (2019); *Gill v. State*, 296 Ga. 351, 352 (2) (765 SE2d 925) (2014). Even

assuming Jivens made this connection, we conclude that evidence of Henry's drug use would have made no difference with respect to either purpose Jivens asserts. If evidence of a victim's antagonistic behavior does not support a voluntary manslaughter charge, evidence about why the victim was antagonistic does not change the result. See *Benton v. State*, 305 Ga. 242, 245-246 (2) (824 SE2d 322) (2019). Regardless of whether Henry's behavior — her pushing and aggression — were motivated by drugs, this evidence still would not have required a voluntary manslaughter charge. As we explained above, Henry's behavior was insufficient provocation to support a voluntary manslaughter charge. Evidence that the insufficient provocation was caused by drug use would not have rendered that provocation the sort that would warrant a voluntary manslaughter instruction.

Jivens also contends this evidence corroborated Humphries's testimony because she was pregnant with Jivens's child at the time of the homicide and thus, perceived as biased in his favor. Specifically, Jivens references Humphries's recorded statement that

19

Henry appeared to be intoxicated and stumbling, pushed both Jivens and Humphries, and accused Humphries of theft. But even if evidence of Henry's drug use corroborated Humphries's depiction of Henry as under the influence, that still would not have required a voluntary manslaughter charge. Jivens offers no other reason why the evidence should have been admitted. Therefore, the trial court did not abuse its discretion in excluding evidence of Henry's drug use.

5. Jivens argues the trial court erred in denying his motion for mistrial based on the State's allegedly improper arguments during closing. Specifically, Jivens contends that the prosecutor improperly accused defense counsel of trying to hide evidence from the jury by objecting to its admissibility, improperly remarked on her experience as a special victim's prosecutor, which was not in evidence, and improperly asserted her personal opinion about Humphries's credibility. But Jivens did not timely move for a mistrial and so failed to preserve this issue for appellate review.

It is well settled that "[i]n the absence of a contemporaneous

20

objection, a mistrial motion is untimely and will not be considered on appeal." *Tennyson v. State*, 282 Ga. 92, 94 (4) (646 SE2d 219) (2007) (citations and punctuation omitted). See *Cowart v. State*, 294 Ga. 333, 336-337 (3) (751 SE2d 399) (2013) (defendant failed to preserve issue for appeal by objecting and moving for mistrial "[a]fter the prosecutor completed her argument . . . [and] the jury left the courtroom"); *Bedford v. State*, 311 Ga. 329, 333 (2) (857 SE2d 708) (2021) ("Because [the defendants] moved for a mistrial after, not contemporaneously with, the State's improper closing argument, the motion was untimely and the issue was not preserved for appellate review."), disapproved in part on other grounds by *Clark v. State*, 315 Ga. 423, 435 (3) (b) n.16 (883 SE2d 317) (2023).

Jivens moved for a mistrial only after the State concluded its closing argument and the jury withdrew from the courtroom, because Jivens's counsel "didn't want to interrupt counsel when she was in the middle of her closing argument." The trial court denied Jivens's motion but confirmed the court would remind the jury of the roles of counsel, court, and the jury. Jivens's mistrial motion, made

after the State's arguments concluded and the jury left the courtroom, was untimely and leaves us nothing to review on this issue.

*Judgment affirmed. All the Justices concur.*