NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: April 18, 2023

S23A0314.  WILLIAMS v. THE STATE

COLVIN, Justice.

Appellant Brandon Williams was convicted of malice murder in connection with the February 2016 shooting death of Kavozia Walker.[1]  On appeal, Appellant contends that (1) insufficient

---

[1] Walker died on February 19, 2016.  On May 25, 2016, a Coffee County grand jury indicted Appellant for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), and possession of a firearm by a convicted felon (Count 3).  The trial court bifurcated the firearm-possession charge and held a jury trial on the murder counts from March 20 through 23, 2017.  At trial, the jury found Appellant guilty of malice murder and felony murder. The firearm-possession charge was then nolle prossed.  The trial court imposed a sentence of life in prison without the possibility of parole for malice murder (Count 1).  The trial court did not impose a sentence on the felony murder count based on its determination that the felony murder count merged into the malice murder conviction.  But see *Malcolm v. State*, 263 Ga. 369, 375 (5) (434 SE2d 479) (1993) ("When valid guilty verdicts are returned on both alternative counts of malice and felony murder, the alternative felony murder count is vacated by operation of [law].").  On March 31, 2017, Appellant's trial counsel timely filed a motion for new trial, which was amended through new counsel on November 4, 2021, and June 2, 2022.  The trial court held a hearing on the amended motion on June 3, 2022, and denied the motion on June 30, 2022.  Appellant filed a timely notice of appeal.  The case was docketed to the

evidence supported his conviction; (2) the trial court erred in imposing a recidivist sentence of life imprisonment without the possibility of parole, rather than exercising its discretion to consider a life-with-parole sentence for murder; and (3) the trial court erred in merging the felony-murder count into the malice-murder count for sentencing purposes, rather than vacating the felony-murder count by operation of law. For the reasons set forth below, we affirm.

1. Appellant first asserts that the evidence presented at trial was insufficient to sustain his convictions because the State failed to prove beyond a reasonable doubt that Appellant was not justified in defending himself. We disagree.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed the following. In February of 2016, Appellant lived in a two-bedroom apartment in the Georgia Woods Apartment complex located in Coffee County. Several other people also lived in the apartment, including Sylvia Livingston

term of this Court beginning in December 2022 and submitted for a decision on the briefs.

2

("Sylvia"), Isom Livingston ("Isom"), and Uglesias English. During the afternoon of February 19, 2016, Sylvia and English, who were romantically involved, began arguing. Appellant offered to drive English around in his black Mazda to let Sylvia "blow off a little steam." Appellant then drove English and Isom to Alma, Georgia. When Appellant, English, and Isom returned to the apartment around 11:30 p.m., English and Sylvia began "fist fighting" and "tussling." Sylvia told English to leave the apartment. English then walked out of the apartment and, while standing in the apartment's breezeway, placed a phone call to his cousin, Walker. English told Walker that he needed Walker to come over to the apartment because Sylvia was "holding [his] clothes" and his "fire," a term he used to refer to his silver 9mm pistol that Sylvia had placed in her closet.

After receiving English's call, Walker had his girlfriend, Irene Fussell, drive him in her truck to the apartment complex. About five to ten minutes after English made the call, security footage, which was viewed by the jury, showed Walker and Fussell pulling into the

3

complex's parking lot and English running over to meet them. The footage further showed Walker exiting the vehicle, handing an object to English, which English later identified as a black Glock 40 pistol, and then following English toward the apartment building. English testified that, before they entered the apartment, English gave the gun back to Walker because he felt that he "didn't need it."

Upon entering the apartment, English and Sylvia continued their physical altercation, and Walker and Appellant began a heated exchange. At trial, Isom, Sylvia, and English testified that they heard Appellant ask Walker something to the effect of, "Who the F are you?" and heard Walker reply something to the effect of, "Don't worry about who the F I am; who the F is you?" English testified that Walker did not pull out his gun while in the apartment. However, Isom and Sylvia testified that they saw Walker wave around the black Glock 40 and point it at Appellant. Isom also testified that Walker pointed the firearm in his direction as well.

Isom testified that, in an effort to defuse the situation, he told Sylvia to get English's gun, and when she retrieved the gun from her

closet, Isom grabbed the gun and handed it back to English. Walker and English then began exiting the apartment. Isom, Sylvia, and English all testified that, as Walker and English were leaving, Appellant said something to the effect of, "You should have killed me when you had a chance."

The security camera captured Walker and English leaving the apartment building and showed Appellant exiting the building a few seconds later. Appellant walked past English and Walker to his car, which was parked between the apartment complex and Fussell's truck. Sylvia then walked out of the apartment building and began physically fighting with English again. English proceeded to pin Sylvia to the ground and Walker, who was close by, stepped in to pull English off of Sylvia. At some point during this altercation, Walker gained possession of the silver 9mm pistol from English and dropped the black Glock 40 on the ground.[2] Meanwhile, Appellant retrieved a gun from his car and placed an item, which officers later identified as a box of bullets, on top of the vehicle. Walker then led

---

[2] Isom retrieved the Glock 40 and placed it in his pocket.

English through the parking lot in the direction of Fussell's truck. As Walker pulled English past Appellant's car, Appellant approached Walker from Walker's left, taking a few steps before quickly raising his gun and firing at Walker's neck. Appellant then turned his back to Walker and started walking away. Walker pulled out the silver 9mm pistol and fired a shot in Appellant's general direction, missing him. After Walker returned fire, Appellant ran back to the apartment complex, went through the apartment, and fled into a wooded area behind the apartment complex. Meanwhile, Walker and English got into Fussell's truck, and they drove off.

Following the shooting, Fussell drove Walker to a hospital, where he died as a result of a "gunshot wound to the left front of his neck." Officers with the Douglas Police Department were then dispatched to the hospital and the apartment complex. When officers arrived at the apartment complex's parking lot, they found a box of .380-caliber bullets on top of Appellant's car and observed blood splatter in the surrounding area. After interviewing Fussell at the hospital and watching the security footage at the apartment

6

complex, officers identified Appellant as the person who shot Walker. Two months later, on April 21, 2016, Appellant was located and arrested in Hollywood, Florida.

Taking the stand in his own defense, Appellant testified that he shot Walker in self-defense. According to Appellant, Walker aimed his gun at Appellant twice while he was inside the apartment, which "spooked" Appellant and "made him mad at the same time." Appellant claimed that he decided to leave the apartment because he was "fed up with the whole . . . situation," and walked to his car to leave. However, upon reaching his car, Appellant did not immediately get in and drive away because he realized he had left his cell phone inside the apartment. Appellant claimed that, shortly after realizing his cell phone was still inside, he heard the commotion between English and Sylvia and saw Walker and English walking toward his car. According to Appellant, he then decided to retrieve his "weapon" from his car, and he "shot first" because he was afraid Walker may try to shoot him.

During cross-examination, Appellant admitted that he did not

see a gun in Walker's hands when he pulled the trigger. Appellant also explained that he fled after the shooting because he was a felon who was not supposed to have a gun, and he was afraid that Walker's family would retaliate. When Appellant was asked whether he told Walker that Walker should have shot him when he had the chance, Appellant claimed that he never said that and that the previous witnesses had made that up.

On appeal, Appellant contends that the trial evidence established that he acted in self-defense under OCGA § 16-3-21 (a), which provides in relevant part that a person is justified in using deadly force "if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself . . . or to prevent the commission of a forcible felony." According to Appellant, the trial evidence showed that he reasonably employed deadly force against Walker because he believed Walker was armed and Walker had twice committed aggravated assault against him while in the apartment. Therefore, Appellant argues, the State failed to prove beyond a reasonable doubt that Appellant was not justified in

8

defending himself.

When evaluating the sufficiency of evidence as a matter of constitutional due process, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). This Court will uphold the jury's verdict "[a]s long as there is some competent evidence, even if contradicted, to support each fact necessary to make out the State's case." *Davis v. State*, 312 Ga. 870, 873 (1) (866 SE2d 390) (2021) (citation and punctuation omitted). "When a defendant presents evidence that he was justified in using deadly force, the State bears the burden of disproving the defense beyond a reasonable doubt." *Birdow v. State*, 305 Ga. 48, 50 (1) (823 SE2d 736) (2019). It is the role of the jury to evaluate the evidence and, when doing so, "[t]he jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense." *Anthony v. State*, 298 Ga. 827, 829 (1) (785 SE2d 277) (2016).

Here, the trial evidence was sufficient to authorize the jury to reject Appellant's self-defense claim and conclude that Appellant did not reasonably believe that deadly force was necessary to defend himself against Walker. Specifically, the video recording of the incident authorized a jury to find that Appellant did not reasonably fear that Walker posed a threat of death or great bodily injury when Appellant shot him, as Walker was leading English to Fussell's truck to leave the apartment complex when Appellant approached Walker from the side, fired his gun, and then walked away. See, e.g., *Huff v. State*, __ Ga. __, __ (1) (__ SE2d __) (2023) (jury authorized to reject self-defense claim where the jury could have concluded from a video recording of the shooting that the victim's conduct "did not give rise to a reasonable belief that [the victim] was threatening to physically harm [the defendant]"); *Jackson v. State*, __ Ga. __, __ (1) (b) (__ SE2d __) (2023) (jury authorized to reject defendant's self-defense claim in part because "[the] victim was not threatening Appellant in any way at the time he shot her"); *Gobert v. State*, 311 Ga. 305, 309 (1) (a) (857 SE2d 647) (2021) (jury

10

authorized to reject defendant's self-defense theory where defendant shot at the victims as they fled and no one was in danger or in any imminent threat of harm at that time).

Moreover, a rational jury could have disbelieved Appellant's claim of self-defense based on the testimony of the witnesses to the shooting and his own trial testimony. Multiple witnesses testified that, as Walker was leaving the apartment, Appellant threatened Walker by telling him something to the effect of "you should have killed me when you had the chance," which could have led the jury to conclude that Appellant shot Walker out of retaliation rather than in self-defense. See *Manning v. State*, 303 Ga. 723, 724 (1) (814 SE2d 730) (2018) (jury authorized to reject self-defense claim in part because "one witness heard appellant make threatening remarks to the victim just prior to seeing appellant pull a gun and commence shooting"). Although Appellant testified that he never threatened Walker, it is the jury's role "to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." *Moss v. State*, 298 Ga. 613, 614 (1) (b) (783 SE2d 652)

11

(2016) (citation and punctuation omitted).  Additionally, Appellant admitted that, at the time he shot Walker, he did not see a firearm in Walker's possession.  Therefore, even if the jury believed that Walker had previously aimed a gun at Appellant while inside the apartment, the jury was authorized to find that Appellant did not reasonably believe that Walker posed any imminent threat of harm to him when he shot Walker.  See *Davis*, 312 Ga. at 873 (1) (jury authorized to reject self-defense claim in part because "[defendant] admitted that he did not see [the victim] pull a gun during the incident").  Thus, given the evidence presented, the jury was authorized to reject Appellant's claim that he shot Walker in self-defense and to find him guilty beyond a reasonable doubt of malice murder.

2. Appellant next contends that the trial court erred in sentencing him to life in prison without the possibility of parole. According to Appellant, although OCGA § 16-5-1 (e) (1)[3] gave the

---

[3] OCGA § 16-5-1 (e) (1) provides that "[a] person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life."

court discretion to consider sentencing him to life with the possibility of parole, the court failed to exercise that discretion because it incorrectly concluded that he was a recidivist who was ineligible for parole under OCGA § 17-10-7.[4]  Appellant further argues that OCGA § 17-10-7 is inapplicable because he was not previously convicted of a serious violent felony, as required under section 17-10-7 (b) (2), and because section 17-10-7 (c) does not apply to murder convictions.[5]  However, we need not decide whether sentencing Appellant as a recidivist would have been improper

---

[4] OCGA § 17-10-7 governs the punishment and parole eligibility of repeat offenders.  Pursuant to OCGA § 17-10-7 (b) (2), any person who has previously been convicted of a serious violent felony and is convicted of another serious violent felony for which he is not sentenced to death, "shall be sentenced to imprisonment for life without parole."  The legislature has defined the following as serious violent felonies: murder or felony murder, armed robbery, kidnapping, rape, aggravated child molestation, aggravated sodomy, and aggravated sexual battery.  See OCGA § 17-10-6.1 (a).  Pursuant to OCGA § 17-10-7 (c), any person with three prior felony convictions who is subsequently convicted of a fourth felony offense shall "serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served."

[5] We note that, although OCGA § 17-10-7 (c) previously stated that it did not apply to fourth-time felony offenders being sentenced for a capital felony, "in 2010 the General Assembly amended OCGA § 17-10-7 (c) to remove the exception for capital felonies." *Kimbrough v. State*, 300 Ga. 516, 517 n.2 (2) (796 SE2d 694) (2017).

13

because Appellant has not shown he was sentenced as a recidivist.

The record shows that prior to trial, the State filed a notice of intent to seek recidivist punishment of Appellant based on his 2013 convictions for possession of cocaine and various traffic offenses, 2016 conviction for possession of a firearm by a convicted felon, and 2019 convictions for aggravated assault and burglary. At the sentencing hearing, the State argued that the court was required to impose a sentence of life in prison without the possibility of parole because of Appellant's prior convictions, and defense counsel did not object. The trial court then orally pronounced it was sentencing Appellant "[to] serve the balance of [his] natural life in prison without the possibility of parole," without further explanation. Subsequently, the trial court entered its final written sentence, which did not reflect that Appellant was sentenced as a recidivist.

Appellant's claim that the trial court failed to exercise its sentencing discretion because it incorrectly concluded that Appellant was a recidivist is without merit. A trial court has discretion to impose a sentence of life without parole for murder

regardless of whether the defendant is a recidivist. See OCGA § 16-5-1 (e) (1). Here, the record does not show that the trial court's sentence was anything other than an exercise of that discretion. Although there was some discussion of recidivism at the sentencing hearing, neither the trial court's oral sentence nor its final sentencing order indicated that Appellant was sentenced as a recidivist. Accordingly, because Appellant has not shown that the trial court failed to exercise its discretion in imposing a life-without-parole sentence for Appellant's malice murder conviction, Appellant has not shown that the sentence was improper. See *Boyd v. Washington*, 293 Ga. 823, 824 (293 SE2d 823) (2013) (concluding that the trial court did not sentence the defendant as a recidivist, despite indicating at one of the sentencing hearings that it would impose a recidivist sentence, because the court did not mention that the defendant was being sentenced as a recidivist at the final sentencing hearing, the final written sentence did not state that the defendant was being sentenced as a recidivist, and the sentence imposed was appropriate).

3. Finally, Appellant claims that the trial court erred in merging Appellant's felony-murder count into the malice-murder count, rather than vacating the felony-murder count by operation of law. The State concedes this point, and we agree. See *Favors v. State*, 296 Ga. 842, 847-848 (5) (770 SE2d 855) (2015) ("When [a] valid guilty verdict is returned on both malice murder and felony murder of the same victim, [a] defendant should be sentenced for malice murder, and [the] alternative felony murder verdict[] stand[s] vacated by operation of law."). Nevertheless, the trial court's incorrect nomenclature did not affect Appellant's sentence because the trial court only imposed a sentence for the malice-murder count. "As there is no sentencing error to correct, we simply note that the felony murder verdict [was] vacated by operation of law, rather than 'merged' as the trial court stated," *Manner v. State*, 302 Ga. 877, 891 (IV) (808 SE2d 681) (2017), and we affirm Appellant's sentence.

*Judgment affirmed. All the Justices concur.*