NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 24, 2025

S25A0646. FOOTS v. THE STATE.

PETERSON, Chief Justice.

Following a jury trial, Keitran Foots was convicted of malice murder and other offenses related to the shooting death of Sharika Bowman.[1] On appeal, Foots raises two claims of error based on the trial court's handling of a voluntary manslaughter instruction as it related to the felony murder counts that were vacated by operation

---

[1] The shooting occurred on March 30, 2018. In October 2018, a DeKalb County grand jury returned an indictment charging Foots with malice murder, two counts of felony murder (predicated on aggravated assault family violence and possession of a firearm by a convicted felon), aggravated assault family violence, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. Following a jury trial, the jury found Foots guilty on all counts. The trial court sentenced Foots to life in prison without the possibility of parole for malice murder, a twenty-year concurrent term for aggravated assault family violence, a five-year concurrent term for possession of a firearm by a convicted felon, and a five-year concurrent term for possession of a firearm during the commission of a felony. Foots filed a timely motion for new trial, which he amended, and the trial court denied his motion. Foots filed a timely notice of appeal, which was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

of law when the trial court entered a sentence on the malice murder count. See *Malcolm v. State,* 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). As a result, any challenge to those counts is moot. See, e.g., *Hoehn v. State*, 293 Ga. 127, 130 (3) (744 SE2d 46) (2013) ("[A]ny issue with regard to Appellant's felony murder count is now moot because his felony murder conviction was vacated by operation of law based on his conviction for the charge of malice murder." (citation and punctuation omitted)). Foots raises only one other claim on appeal, asserting that the evidence was insufficient to support his convictions. But the evidence presented at trial and set out below was sufficient, so we affirm.

1. *The trial evidence*

Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. Foots began dating Bowman in 2015 and later moved into Bowman's house. Bowman had three children prior to meeting Foots, and she and Foots had two children together. Two of Bowman's oldest children testified at trial about Foots being physically violent towards Bowman. Once, Foots

slammed Bowman's head against the wall while she was pregnant. Another time, Bowman was sitting in her truck with the window rolled down when Foots reached into the truck and pulled her hair. A different time, Foots broke the handle to the driver's side door of Bowman's truck when she would not let him enter the truck and would not roll down the window.

On the morning of the shooting, Foots and Bowman were out of the house, and Bowman's oldest child, D.H., was left to watch over his younger brothers. While D.H. waited for Bowman to arrive so she could take him to school, Foots arrived at the house and sat in the living room for about an hour before leaving. After Foots left, Bowman sent a text message to D.H. to let him know she was approaching the house. D.H. looked out the window and saw Bowman pull into the driveway followed by Foots in his vehicle. D.H. went to put on his shoes and almost immediately heard gunshots. D.H. looked out the window again and saw Foots shooting into Bowman's truck. Foots circled the truck, tried to open the passenger side door, and then fled.

Some of Bowman's neighbors also heard multiple gunshots and saw a black vehicle speed away. One neighbor who knew Foots said that after hearing the gunshots, he looked outside his window and saw Foots trying to open Bowman's passenger door before fleeing.

D.H. soon called the police, and when they arrived, they observed that the motor to Bowman's truck was running, the doors were locked, and Bowman was unresponsive and appeared to be dead. Other first responders arrived, forced their way into Bowman's truck, found no signs of life, and pronounced her dead.

A total of six 9mm shell casings were recovered at the scene. Bowman's truck window had multiple defects and had been struck by bullets at least five times. A medical examiner determined that Bowman died from multiple gunshot wounds and recovered three bullets from her body during an autopsy.

After the shooting, Foots fled to North Carolina to see an acquaintance, Debbie Alston. On the way, Alston told Foots not to speed and that he might get robbed because of the type of car he was in. Foots responded that he was not worried about it because he had

four guns in his car. Alston met up with Foots, but when she learned that he was wanted for murder, she contacted police to report that he was staying at a hotel. Police went to the hotel, but Foots fled in his vehicle and led police on a high-speed chase. Foots maintained contact with Alston during the chase and asked her to pick him up after he abandoned his car. Instead, Alston told police where to find Foots, and police arrested him nearby. During a search of his car, police found a 9mm gun. Forensic examination revealed that the gun fired the bullets recovered from Bowman's body and the shell casings recovered at the scene.

Foot testified at trial as follows. He admitted he was a convicted felon and claimed he did not own a gun. On the morning of the shooting, he went to Bowman's house, helped with the youngest children, talked to D.H., briefly left the house, and returned at Bowman's request. Upon approaching Bowman's truck, she remained inside with the window rolled down. They got into a heated argument, and, according to Foots, she pointed a 9mm gun at him. Foots lunged at Bowman when she began to cock the

5

weapon. There was a struggle for the weapon during which she grabbed his head. Foots broke free and disarmed her. Bowman rolled up her window and began reaching over the passenger seat, at which point Foots opened fire. Foots believed Bowman was reaching for another gun and feared for his life.[2] There was hair found in Bowman's hand, but Foots did not know if the hair came from his head.[3]

2. *Sufficiency of the evidence*

Foots concedes that the trial evidence clearly demonstrates that he shot and killed Bowman, but he argues that the evidence did not establish that he did so maliciously. He argues that the evidence was consistent with his claim that he shot Bowman in self-defense after she pointed a gun at him and he wrestled it away from her. We reject this claim.

---

[2] Other witnesses confirmed that Bowman owned a gun, but they did not say she owned multiple guns or describe the gun she owned. Bowman's daughter stated that Bowman generally kept the gun in the garage and never had it in her purse or in her truck,  but police did not find a gun during a search of her house after the shooting.

[3] There is no indication that the hair was tested.

In considering a claim that evidence was insufficient in violation of federal due process under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), "our review is limited to an evaluation of whether the trial evidence, when viewed in the light most favorable to the verdicts, is sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Goodman v. State*, 313 Ga. 762, 766 (2) (a) (873 SE2d 150) (2022) (citation and punctuation omitted). "We put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." Id. at 766-767 (2) (a) (citation and punctuation omitted). "When a defendant presents evidence that he was justified in using deadly force, the State bears the burden of disproving the defense beyond a reasonable doubt." *Williams v. State*, 316 Ga. 147, 150 (1) (886 SE2d 818) (2023) (citation and punctuation omitted). But "[i]t is the role of the jury to evaluate the evidence and, when doing so, the jury is free to reject any evidence in support of a justification defense and

7

to accept the evidence that the shooting was not done in self-defense." Id. (citation and punctuation omitted); see also *Gibbs v. State*, 309 Ga. 562, 565 (847 SE2d 156 (2020) ("[T]he question of justification . . . is for the jury to decide.").

Here, the only evidence supporting a self-defense claim is Foots's self-serving testimony. The jury was not only authorized to reject this testimony, see *Williams*, 316 Ga. at 151 (1), but if it disbelieved Foots's claim of self-defense, the jury could also consider his testimony as substantive evidence of guilt where there was some corroborative evidence pointing to guilt, see *Mims v. State*, 310 Ga. 853, 855 (854 SE2d 742) (2021). There was such evidence here, as the jury could infer that his actions after the shooting were inconsistent with his self-defense claim, as he immediately fled from the crime scene, went to another state, and led police on a high-speed car chase there. See *State v. Orr*, 305 Ga. 729, 741 (4) (a) (827 SE2d 892) (2019) ("[T]he fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, is admissible as evidence of

consciousness of guilt, and thus of guilt itself." (citation and punctuation omitted)); *Renner v. State*, 260 Ga. 515, 517 (3) (b) (397 SE2d 683) (1990) ("The fact that a suspect flees the scene of a crime points to the question of guilt in a circumstantial manner.").

As to his other convictions, Foots raises no specific sufficiency arguments, relying only on his self-defense claim. The evidence described above shows that he is a convicted felon and he assaulted Bowman, the mother of two of his children, with a deadly weapon when he shot and killed her. Because the jury was authorized to reject Foots's self-defense claim, the evidence was sufficient to support his aggravated assault family violence and firearms convictions. See *Walker v. State*, 312 Ga. 232, 235-236 (1) (862 SE2d 285) (2021) (because the jury was authorized to disbelieve the defendant's self-defense claim, the evidence was sufficient to support the firearm-possession conviction); *Merritt v. State*, 311 Ga. 875, 877-878 (1) (860 SE2d 455) (2021) (evidence was sufficient to support aggravated assault family violence where defendant shot and killed his wife and mother to his children, and evidence

authorized the jury to reject defendant's accident theory).

*Judgment affirmed. Warren, PJ, and Bethel, Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*