NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided:   February 6, 2024

S23A1166. MORRELL v. THE STATE.

PETERSON, Presiding Justice.

Karonta Morrell appeals his convictions related to the shooting death of Jonathan Lang.[1] On appeal, Morrell argues that the

---

[1] The crimes against Lang occurred in March 2016. Morrell was charged in a 21-count indictment for various crimes related to the deaths of Lang and Roquan Scarver, as well as various crimes against Harry Rawls, III, and Tonya Murcherson. The Scarver counts were severed, Morrell was found guilty of those counts at a trial, and we affirmed his convictions. See *Morrell v. State*, 313 Ga. 247 (2022).

Relevant to this appeal, Morrell was charged as follows: malice murder (Count 9); two counts of felony murder (Counts 10-11); criminal attempt to murder  Harry Rawls, III (Count 12); three counts of aggravated assault, one against Lang (Count 13), one against Rawls (Count 14), and the other against Tonya Murcherson (Count 15); five counts of possession of a firearm during the commission of a felony (Count 16-20); and one count of possession of a firearm by a convicted felon (Count 21). At an April 2018 trial on Counts 9-21, the jury found Morrell guilty on all counts. The trial court sentenced Morrell to life in prison without the possibility of parole on Count 9, a consecutive 30-year term in prison on Count 12, a consecutive 20-year prison term on Count 15, and four consecutive five-year terms in prison for Counts 16, 18, 20, and 21. The remaining counts were merged or vacated by operation of law. Morrell filed a timely motion for new trial, which he later amended. In an order entered on May 23, 2023, following a hearing, the trial court denied Morrell's motion for new trial, and he timely appealed. His appeal was docketed to this Court's August 2023 term and submitted for a decision on the briefs.

evidence was insufficient to support his convictions. He also argues that he cannot obtain full and fair appellate review because the record contains several deficiencies. We affirm because the evidence was sufficient to support Morrell's malice murder conviction, and Morrell fails to show how any deficiencies in the record have harmed him.

The evidence at trial showed the following. On March 1, 2016, Kovasa Lindsay was visiting her mother, Tonya Murcherson, who lived with Ashley Lindsay, Kovasa's sister. Lang was there, and at some point he got into an argument with Harry Rawls, III, Kovasa's boyfriend, who was drunk and had been cursing at the family.

Morrell heard Lang and Rawls arguing, approached the house, and asked Lang, "cuz, you okay?"[2] Rawls jumped off the porch and told Morrell, "you ain't got nothing to do with this." Rawls and Morrell began arguing, and Morrell pulled a gun from the back of his pants and pointed it at Rawls's head. The family told Kovasa that she "better go get" Rawls because Morrell would shoot Rawls.

---

[2] Trial testimony indicated that Morrell and Lang were family friends.

As Kovasa tried to pull Rawls away, he threw a drink at her face. Murcherson left the porch, approached Rawls, and slapped him; he responded by slapping her to the ground. Lang and Ashley then left the porch and tried to pull Rawls away. When Rawls began to walk toward Morrell, Morrell fired his gun, but hit Murcherson and Lang instead of Rawls. Murcherson was struck in the shoulder. Lang collapsed and told Morrell, "oh, cuz, you shot me." Morrell apologized, saying he did not mean to shoot Lang, and Lang told him to leave before the police arrived. Morrell was the only person with a gun during the argument.

Police arrived and found Lang lying on the sidewalk. Lang told a police officer that he was walking across the street when someone shot him, and Lang claimed not to know who shot him. Lang died later that day from a single gunshot that entered his arm and struck his torso.

Morrell met with Lang's mother about a day after the shooting and admitted to pulling out a gun and shooting Lang by mistake. Lang's mother urged Morrell to turn himself in to the police.

Quantina Bostic knew Morrell from the neighborhood. Bostic witnessed the shooting, was interviewed by police the day after, and identified Morrell in a photo lineup as the person who shot and killed Lang. During the interview, which was recorded, Morrell called Bostic on her cell phone and said that he needed to "get to" a witness who was talking to the police. Morrell talked about being on the run and said that he would get "his people" to talk to this witness, who was likely staying at Murcherson's house. Morrell said that he did not want to "hit them folks," which a detective testified meant that Morrell did not want to shoot or kill them if he did not have to and was instead willing to pay for the witness's refusal to cooperate with police. Another detective testified that he listened to recorded phone calls Morrell made from jail and overheard Morrell threaten to "do away with" Kovasa, which the detective interpreted as killing her. Kovasa testified that she heard Morrell made threats against her for cooperating with the police, and she and her children were put under police protection and relocated due to Morrell's threats. During the recorded call with Bostic, Morrell said that he was hiding at his

4

girlfriend's house, and police later found and arrested him there.

About a week before his trial was originally set to begin, Morrell called Bostic, attempting to get her not to testify. Morrell acknowledged that Bostic could get into legal trouble for refusing to go to court to testify and discussed ways he could help get her out of such trouble. Morrell also discussed the other witnesses who would testify against him and said the prosecutor "ain't going to be able to do s\*\*t" if he "gets to" those witnesses.

1. Morrell argues that the evidence was insufficient as a matter of federal constitutional due process to support his murder conviction.[3] He argues that he was not present during the altercation leading to Lang's death. He alternatively argues that, even if he were present, the trial evidence shows that his actions were justified or that, at most, he was guilty only of voluntary

---

[3] Although Morrell refers to "convictions" in his appellate brief, his argument regarding the sufficiency of the evidence focuses exclusively on his malice murder conviction. Because we generally do not review evidentiary sufficiency sua sponte in non-death-penalty cases, we address the sufficiency of the evidence only on the malice murder count. See *Montanez v. State*, 311 Ga. 843, 848 n.10 (1) (a) (860 SE2d 551) (2021) (limiting sufficiency review to counts actually argued on appeal) (citing *Davenport v. State*, 309 Ga. 385, 391-392 (4) (846 SE2d 83) (2020)).

manslaughter based on provocation. We disagree.

When evaluating the sufficiency of evidence as a matter of federal constitutional due process, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). We do not resolve conflicts in the evidence or determine the credibility of witnesses; instead, we view the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted).

With respect to Morrell's first argument, the jury could easily find that Morrell was present during the crime, as several eyewitnesses placed him there. Morrell's own statements also placed him there, as Lang's mother testified that he apologized to her for firing the shot that killed Lang.

As for his alternative argument, it likewise has no merit. Morrell argues that the evidence showed that he acted in defense of

self or others or committed voluntary manslaughter. But he did not present a justification defense to the jury, arguing only that the State's witnesses were not credible and that his alleged actions amounted to voluntary manslaughter.[4] And, in any event, the evidence that Morrell acted in defense of self or others was not so strong that the jury was required to find justification. See, e.g., *Williams v. State*, 316 Ga. 147, 150 (1) (886 SE2d 818) (2023) (although the State bears the burden of disproving a defendant's claim that his actions were justified, it is the jury's role to determine whether that burden has been met, and the jury is free to reject any evidence in support of a justification defense).

The trial court thoroughly charged the jury on voluntary manslaughter, stating that to find Morrell guilty of that offense, rather than murder, it had to find that he acted solely as a result of sudden, violent, and irresistible passion resulting from the serious provocation sufficient to excite such passion in a reasonable person.

---

[4] Morrell makes no claim on appeal that his trial counsel was ineffective for failing to raise a justification defense or that the trial court erred in failing sua sponte to charge the jury on justification.

See OCGA § 16-5-2 (a). Morrell argues that the altercation between Rawls and Lang, which also involved Murcherson, was sufficient provocation. But we have made clear that fighting is not the type of provocation that would support a voluntary manslaughter jury charge, see e.g., *Wilkerson v. State*, 317 Ga. 242, 247 (2) (892 SE2d 737) (2023), much less demand a voluntary manslaughter conviction, see, e.g., *Burke v. State*, 302 Ga. 786, 790-791 (809 SE2d 765) (2018) (explaining that "acting out of fear of bodily harm is not the same as acting in the heat of passion, and only evidence of the latter supports a voluntary manslaughter conviction"). Based on the evidence recounted above, the jury was authorized to find Morrell guilty of malice murder.

2. Morrell argues that the trial record is incomplete and does not allow for meaningful appellate review. Morrell does not argue that any part of the record is missing, and so his claim fails.

In preparing his motion for new trial, Morrell requested that the court reporter prepare a transcript of certain recordings admitted into evidence at trial— jail phone calls from Morrell,

Bostic's recorded interview, and a 911 call following the shooting. The court reporter provided such a transcript, but Morrell complains that periodic "indiscernible" notations make the record "incomplete" and that this precludes meaningful appellate review and amounts to a due process violation. [5]

His claim fails because the appellate record is complete. All of the transcripts from the trial and the exhibits at issue are included in the appellate record, and Morrell makes no claim that he has been denied access to any of the appellate record. See *Gadson v. State*, 303 Ga. 871, 878 (3) (a) (815 SE2d 828) (2018) (a defendant can

---

[5] Morrell argues that the record he characterizes as inadequate deprives him of his due process rights under both the Georgia and United States Constitutions. Morrell cites several of our cases which ultimately rely on federal authority guaranteeing the right to a transcript as a matter of federal due process. See, e.g., *Sheard v. State*, 300 Ga. 117, 120 (2) (793 SE2d 386) (2016) (citing *Griffin v. Illinois*, 351 U.S. 12 (76 SCt 585, 100 LEd 891 (1956)). He cites no authority interpreting the Georgia Constitution's Due Process Clause (Ga. Const. of 1983, Art. I, Sec. I. Par. I) and makes no argument that his claim would be analyzed differently under this provision. Accordingly, we consider his claim only through the analytical lens of the federal due process clause. See, e.g., *State v. Holland*, 308 Ga. 412, 413 n.3 (841 SE2d 723) (2020) (declining to consider whether Georgia constitutional due process clause provides a rule substantively different from federal due process clause where parties made no argument they should be applied differently).

obtain a new trial where (1) all or an important part of the transcript is lost or materially inadequate or (2) when the verbatim transcript is missing only one or a few parts of trial and he has been specifically has been specifically harmed by the omission). Morrell's claim centers exclusively on the transcripts of those exhibits, but he cites no authority requiring court reporters to transcribe the contents of recordings admitted as exhibits. See *Griffin v. State*, 311 Ga. 579, 585 (4) (858 SE2d 688) (2021) (rejecting a similar claim in part because the defendant cited no authority mandating the transcription of text messages admitted into evidence and viewed by the jury). He was not entitled to a transcript of the exhibits, and the fact that he was given something more than he was due does not support a due process violation.

*Judgment affirmed. All the Justices concur.*