320 Ga. 668
FINAL COPY

S24A0892. HOLLOWAY v. THE STATE.

BETHEL, Justice.

Tico Holloway was convicted of malice murder and related crimes in connection with the shooting death of Mercedes Dejesus Antunez-Flores and contemporaneous violent crimes against N. H. and M. H.[1] On appeal, Holloway challenges the sufficiency of the evidence supporting his conviction for malice murder and argues that the trial court erred in two respects. For the reasons that follow,

---

[1] The crimes occurred on August 17, 2019. In January 2021, a Cobb County grand jury indicted Holloway for malice murder (Count 1), three counts of felony murder (Counts 2-4), criminal attempt to commit armed robbery (Count 5), aggravated assault of Antunez-Flores (Count 6), aggravated assault of N. H. (Count 7), aggravated battery of N. H. (Count 8), armed robbery (Count 9), aggravated assault of M. H. (Count 10), and possession of a firearm by a convicted felon (Count 11). At a June 2021 trial, a jury found Holloway not guilty of armed robbery (Count 9) but guilty of all other counts. The trial court sentenced Holloway to serve life in prison without the possibility of parole on Count 1; a concurrent term of 20 years on Count 8; a concurrent term of 20 years on Count 10; and a concurrent term of ten years on Count 11. The remaining counts merged or were vacated by operation of law. Holloway filed a timely motion for new trial, which he later amended through new counsel. Following a hearing, the trial court denied Holloway's motion, as amended, on February 19, 2024. Holloway filed a timely notice of appeal, and the case was docketed to this Court's August 2024 term and submitted for a decision on the briefs.

we affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. N. H. and M. H., both of whom testified at Holloway's trial, worked as prostitutes at a mobile home located in Cobb County; Antunez-Flores worked as a security guard and handled money for the operation. None of the three were armed on the night of the crimes. When Holloway arrived at the mobile home, he was greeted near the front door by N. H., M. H., and Antunez-Flores. While waiting on Holloway to select a companion, Antunez-Flores turned and began walking away. Holloway then pointed a gun at the back of Antunez-Flores's head. Antunez-Flores turned around and began struggling with Holloway for the gun, and Holloway shot him. According to N. H., Holloway never let go of the gun during the struggle. After being shot, Antunez-Flores attempted to fight Holloway and then tried to flee, but Holloway, who was still armed with the gun, overpowered him and dragged him around the mobile home. During the struggle, Holloway fired the gun several more times, and a bullet grazed

M. H.'s leg. Holloway also demanded money from the women. M. H. retreated to a bedroom and ultimately fled the mobile home to find help. When N. H. attempted to flee, Holloway stopped her and shot her before she was able to escape. Despite their injuries, both women survived.

Responding officers found Antunez-Flores, who had suffered two gunshot wounds, deceased inside the mobile home. Investigators located nine shell casings at the crime scene, all of which were later determined to have been fired from the same gun. Cell phone records placed Holloway's cell phone within meters of the mobile home at the time of the shooting.

On appeal, Holloway first asserts that the evidence was insufficient as a matter of federal constitutional due process to support his conviction for malice murder.[2] In support of this claim,

---

[2] Holloway refers to "convictions" in his appellate brief, but his argument focuses solely on the evidence supporting his malice murder conviction. Because this Court no longer reviews sua sponte the sufficiency of the evidence in non-death penalty cases, we limit our sufficiency review to the argument Holloway makes in raising this claim and address only the malice murder conviction. See *Morrell v. State*, 318 Ga. 244, 246 (1) n.3 (897 SE2d 841) (2024); *Davenport v. State*, 309 Ga. 385, 391-392 (4) (846 SE2d 83) (2020).

Holloway points to his own testimony at trial that Antunez-Flores brandished a gun when Holloway pulled a large amount of cash out of his pocket, that he fought with Antunez-Flores for control of the gun, and that "the gun was just going off." Holloway argues that, based on the physical evidence at the crime scene, his account of the crime was just as plausible as the theory advanced by the State, so, he says, the State failed to meet its burden of disproving his justification defense beyond a reasonable doubt. We disagree.

When considering such a claim of evidentiary insufficiency, this Court asks whether the evidence presented at trial was sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "In making that determination, we view the evidence in the light most favorable to the verdict[s], and we put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the jury." *Davis v. State*, 312 Ga. 870,

4

872-873 (1) (866 SE2d 390) (2021) (citation and punctuation omitted). Where, as here, "a defendant presents evidence that he was justified in using deadly force, the State bears the burden of disproving the defense beyond a reasonable doubt." *Willerson v. State*, 312 Ga. 369, 372 (1) (863 SE2d 50) (2021) (citation and punctuation omitted). It is the jury's role, however, "to evaluate the evidence and, when doing so, the jury is free to reject any evidence in support of a justification defense and to accept the evidence that the defendant did not act in self-defense." *Russell v. State*, 319 Ga. 556, 559 (2) (905 SE2d 578) (2024) (citation and punctuation omitted). Thus, we will affirm the jury's verdict "[a]s long as there is some competent evidence, even if contradicted, to support each fact necessary to make out the State's case[.]" *Davis*, 312 Ga. at 873 (1) (citation and punctuation omitted).

Here, the evidence at trial was sufficient to disprove beyond a reasonable doubt Holloway's claim of self-defense. N. H. and M. H. both testified that Holloway was the aggressor. According to the women's trial testimony, when Antunez-Flores turned his back to

Holloway and began walking away, Holloway brandished a gun and pointed it at the back of Antunez-Flores's head. During the ensuing struggle, Holloway shot Antunez-Flores, and Holloway never relinquished control of the gun. Though Holloway testified to a different version of events, the jury was free to reject that self-serving testimony and find him guilty beyond a reasonable doubt of malice murder. See *Jackson v. State*, 315 Ga. 543, 551 (1) (b) (883 SE2d 815) (2023) (jury authorized to reject self-defense claim in part because the victim "was not threatening [a]ppellant in any way at the time he shot her"); *Lay v. State*, 305 Ga. 715, 717 (2) (827 SE2d 671) (2019) ("An aggressor is not entitled to a finding of justification." (citation and punctuation omitted)).

2. Holloway next contends that the trial court erred by allowing the medical examiner to testify remotely via videoconference, asserting that this procedure deprived him of the right to a face-to-face confrontation with the medical examiner and, as such, violated his right to confrontation under the Sixth Amendment to the United States Constitution. See U. S. Const., Amend. VI ("[i]n all criminal

6

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"). Because Holloway failed to object to the trial court's actions or otherwise seek to exclude this evidence at trial, we review this claim only for plain error. See *Leonard v. State*, 316 Ga. 827, 834 (3) (889 SE2d 837) (2023); OCGA § 24-1-103 (d). To show plain error, Holloway "must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings." *Griffin v. State*, 309 Ga. 860, 864 (2) (849 SE2d 191) (2020) (citation and punctuation omitted). Holloway cannot establish plain error because the record shows that the error alleged was affirmatively waived when Holloway consented to the medical examiner's remote testimony.

"For purposes of plain error review, an affirmative waiver is the intentional relinquishment or abandonment of a known right[.]" *Griffin*, 309 Ga. at 865 (2) (citation and punctuation omitted). See

also *Grullon v. State*, 313 Ga. 40, 46-47 (2) (867 SE2d 95) (2021) (in connection with plain error standard, discussing distinction between mere failure to object and affirmative waiver of the error on appeal). Here, the record reflects that, at a pretrial hearing at which Holloway was present, the prosecutor informed the trial court that the medical examiner had moved to Florida and could not personally appear at trial due to professional conflicts, but could testify remotely via videoconference. The prosecutor indicated that Holloway's counsel had "agreed that that is okay with him." Trial counsel confirmed and the trial court noted for the record that both parties stipulated to the procedure. At trial, the medical examiner testified via videoconference and was subject to cross-examination by Holloway. Because Holloway actually agreed to the procedure about which he complains on appeal, we conclude that Holloway intentionally relinquished any claim that the trial court erred by permitting the medical examiner to testify remotely, and this enumeration fails at the first step of plain error review. See *Hughes v. State*, 310 Ga. 453, 457 (2) (b) (851 SE2d 580) (2020) ("By agreeing

8

with the trial court, [appellant] affirmatively waived his right to challenge the trial court's action.").

Holloway, however, resists this conclusion, arguing that a defendant's right to confrontation under the Sixth Amendment to the federal Constitution is not waivable by counsel but instead must be waived personally by the defendant. In that regard, he complains that the trial court failed to conduct an inquiry into whether he in fact personally waived the right to a face-to-face confrontation with the medical examiner. In support of this argument, Holloway relies on what he characterizes as the "analogous" decision of the United States Supreme Court in *Faretta v. California*, 422 U. S. 806, 835 (V) (95 SCt 2525, 45 LE2d 562) (1975), which requires that a trial court hold a hearing to determine whether a defendant is knowingly and intelligently waiving his right to counsel, which is also secured by the Sixth Amendment. But as we have explained, "[a]n error cannot be plain where there is no controlling authority on point" or if, as here, an appellant's "theory requires the extension of precedent." *Early v. State*, 313 Ga. 667, 672-673 (2) (b) (872 SE2d

9

705) (2022) (citation and punctuation omitted). And Holloway points to no controlling authority from this Court or the Supreme Court of the United States — nor are we aware of any — holding that a defendant's right to confrontation cannot be waived by counsel or requiring that a trial court conduct an on-the-record inquiry into the matter. Because there is no controlling authority supporting Holloway's argument, he has failed to show clear and obvious error, and, thus, this claim of plain error fails. See *Leonard*, 316 Ga. at 835-836 (3) ("[T]he absence of clear authority to support the proposition that [an appellant] advances prevents the establishment of plain error." (citation and punctuation omitted)).

3. Finally, Holloway argues that his right to a fair trial under the Georgia Constitution was violated when the trial court permitted errors in the Spanish-to-English interpretation of M. H.'s trial testimony to go uncorrected. Specifically, during M. H.'s direct examination, errors in the interpretation of her testimony became apparent to the parties. After consulting with the parties, the trial court dismissed the interpreter and replaced him with a different

interpreter. When M. H.'s testimony resumed, the prosecutor retraced and clarified some — but not all — ground covered by the first interpreter, namely testimony concerning the events on the night of the crimes beginning when Holloway arrived at the mobile home. Holloway now complains that the trial court did not require M. H. to start her testimony entirely anew with the assistance of the replacement interpreter. As a result, he says, other interpretive errors went uncorrected and thereby deprived him of his right to a fair trial.

Because the record reflects that Holloway invited the error about which he now complains, we conclude that he has waived appellate review of this claim. The record shows that, when the trial court consulted with the prosecutor and Holloway's counsel before dismissing the original interpreter, Holloway's counsel voiced agreement with replacing the original interpreter but not restarting M. H.'s testimony from the beginning, stating, "I consent with just getting a new interpreter and let's go back to what happened — we know where [the witness] was, where she lived. That's not a real big

11

issue. . . . From when . . . the guy arrived, we'll go forward." In fact, Holloway's counsel expressed opposition to restarting M. H.'s testimony. When the trial court mused, "She's not going to start at the beginning, I hope," trial counsel responded, "No, we're not. Trust me . . . . If she does that, I've got her." And in response to a question from the trial court in the jury's presence, Holloway's counsel explained, "We want to make certain that the . . . witness's testimony is correct and . . . accurate. And so we agreed to go back somewhat to where we agreed there were not any issues and going forward from there." By agreeing with the decision not to restart M. H.'s testimony from the beginning, Holloway invited the trial court's actions and affirmatively waived any claim of error regarding this issue. See *Heinze v. State*, 310 Ga. 552, 559 (2) (852 SE2d 504) (2020); *Medina v. State,* 309 Ga. 432, 438 (2) (844 SE2d 767) (2020) ("A party may not complain on appeal of a ruling that he contributed to or acquiesced in by his own action, trial strategy, or conduct." (citation and punctuation omitted)). Accordingly, this claim fails.

*Judgment affirmed. All the Justices concur.*

Decided January 28, 2025.

Murder. Cobb Superior Court. Before Judge Flournoy, Senior Judge.

*Star Law, F. Michael Starosto*, for appellant.

*Flynn D. Broady, Jr., District Attorney, Leslie A. Coots, Linda J. Dunikoski, Elizabeth M. York, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Michael A. Oldham, Clint C. Malcolm, Senior Assistant Attorneys General*, for appellee.