NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 3, 2026

S25A1094. WELSCH v. THE STATE.

BETHEL, Justice.

Following trial, Ronald Welsch was convicted of murder and related crimes in connection with the shooting deaths of Jamar Walton and Sherrod Gore.[1] On appeal, Welsch argues that the

---

[1] The crimes were committed on May 28, 2021. On April 8, 2022, a Lowndes County grand jury indicted Welsch for the malice murder of Walton (Count 1), two counts of felony murder based on the aggravated assaults of Walton and Gore (Counts 2 and 3), two counts of aggravated assault (Counts 4 and 5), possession of a firearm during the commission of a felony (Count 6), and possession of a firearm by a convicted felon (Count 7). The grand jury also indicted Kent Gillard on the first six counts; Gillard entered a non-negotiated guilty plea, testified against Welsch at trial, and is not a party to this appeal.

At a bench trial held from September 12 to 16, 2022, the trial court found Welsch guilty on all seven counts. The trial court sentenced Welsch to serve life in prison without parole for the malice murder of Walton, a consecutive term of life without parole for the felony murder of Gore, a consecutive term of five years for possession of a firearm during the commission of a felony, and a consecutive term of ten years for possession of a firearm by a convicted felon. The remaining counts merged or were vacated by operation of law.

Welsch filed a timely motion for new trial, which he subsequently amended twice. The trial court held a February 2024 hearing on that motion and then denied it on March 24, 2025. Welsch timely filed a notice of appeal,

evidence was insufficient to sustain his convictions and that the trial court erroneously denied his motion for new trial on the "general grounds" under OCGA §§ 5-5-20 and 5-5-21. Welsch also argues that the trial court erroneously admitted testimony in violation of the rule against hearsay and the Confrontation Clause of the Sixth Amendment to the United States Constitution. These claims fail, so we affirm.

1. Construed in the light most favorable to the verdicts, the evidence at trial showed the following. Sometime in the late hours of May 27, 2021, or the early hours of the next day, Welsch called his friend, Kent Gillard, and asked him to drive Welsch to a bar in Valdosta. Gillard picked up Welsch and Gillard's cousin, Shaivon Edwards, in a silver Nissan sedan. Gillard drove, Edwards sat in the front passenger seat, and Welsch sat in the back seat. Upon arriving at the bar, the trio did not go inside. They instead turned into the parking lot of the adjacent bank and backed into a parking space,

and his case was docketed to the Court's August 2025 term and submitted for a decision on the briefs.

2

leaving the car running but turning its headlights off. Gillard texted his girlfriend, who was inside the bar, to tell her: "I'm not going in I'm laying," and "I'm here … finna flip a n***a."

Around 1:30 a.m., Welsch, Gillard, and Edwards saw a group of men outside the bar. The group included Brian Martinez, Gore (nicknamed "Greek"), and Walton (nicknamed "D-Rose"), with whom Welsch had an ongoing "beef" over a woman named Shaniya Brooks. The group walked toward the bank, where their cars were parked, and Welsch told Gillard to pull out of the bank's parking lot. Gillard then drove to a restaurant parking lot adjacent to the bank. Welsch told Gillard to wait, exited the car, and headed back toward the bank on foot.

Around the same time, Martinez and Walton got into Martinez's car. Walton exited the car shortly after, and Martinez heard gunshots. Walton, who had been shot and was bleeding profusely, then jumped back into Martinez's car and told Martinez to get him to a hospital. According to Martinez, Walton identified Welsch as the shooter.

Shortly after Welsch left his car, Gillard also heard gunshots, and Welsch soon ran back to the car. Welsch had a black gun—"probably a Glock"—and Welsch said, "I got them, I got them n*****s." Gillard immediately drove away.

Restaurant surveillance footage played at trial showed a silver Nissan sedan entering the parking lot in the minutes before the shooting. A person appeared to exit the Nissan's back seat, walk around the car, and walk in the direction of the bank while the Nissan moved to the rear of the lot. Bank surveillance footage played at trial showed a person walking across the bank's parking lot from the direction of the restaurant. The restaurant and bank cameras both captured a bright flash of light followed by a person running from the bank toward the restaurant. The Nissan left the parking lot shortly after.

Police responded to the shooting and found Gore on the ground next to his car in the bank parking lot, unresponsive and with an apparent gunshot wound. He had apparently been in or near his own car, also parked in the bank lot, at the time of the shooting and was

pronounced dead on scene. At the hospital, Walton was declared dead from his wounds. Police processing the scene collected numerous bullet fragments, bullet jackets, and 9mm cartridge casings. A firearms examiner determined that the cartridge casings and bullet jackets from the scene, along with bullets collected during the victims' autopsies, were fired from the same 9mm Glock pistol.

Later on the morning of the shooting, Welsch called his brother and told him that he had been out late in the Valdosta area, got into an altercation, and that Walton pulled a gun on Welsch. Welsch also told his brother that he and Brooks were going to Florida.

Roughly a day later, Martinez spoke with Walton's mother about her son's death. Martinez told her that, on the way to the hospital, Walton said he saw his shooter. Walton's mother asked whether "it was that dude Murda Ron," and Martinez replied, "Yes it was, I seen him." Martinez later confirmed his account of the crimes to investigators, including that he saw Welsch run past his car immediately after the shooting and that Walton said the shooter was "Murda Ron."

Several days after the shooting, officers arrested Welsch and Brooks during a traffic stop. The subsequent investigation led officers to obtain Welsch's phone records, which showed that Welsch's phone was in the Valdosta area on the night of the shooting and then in Florida the following day. A text received by Welsch's phone the day after the shooting asked if Welsch had killed somebody, and a text from Welsch's phone responded, "shhh," "delete that, it was two people." Multiple other text messages sent from Welsch's phone referred to and introduced the sender as "Murda Ron"—Welsch's nickname, Instagram handle, and Snapchat display name. And Welsch's social media records included a video of Welsch rapping, "You can ask D-Rose and Little Greek how that sh** sprays and that b**** got hit in the face. … How about this, let's go to the Club … , and I'll kill y'all inside the club this time."

2. Welsch first argues that the evidence was constitutionally insufficient to support his murder convictions.[2] We review this claim

---

[2] Welsch's argument is difficult to pin down. He appears to have conflated his challenge to the sufficiency of the evidence with his claim that

by "view[ing] the evidence in the light most favorable to the …

verdicts and consider[ing] whether any rational trier of fact could

have found him guilty beyond a reasonable doubt." *Bostic v. State*,

322 Ga. 688, 690 (2025) (citing *Jackson v. Virginia*, 443 US 307, 319

(1979)). That review is limited and "leaves to the [trier of fact] the

resolution of conflicts in the testimony, the weight of the evidence,

the credibility of witnesses, and reasonable inferences to be made

from basic facts to ultimate facts." Id. (quotation marks omitted).

Welsch was convicted of malice murder for killing Walton and

felony murder predicated on aggravated assault for killing Gore.

Malice murder required the State to prove that Welsch "unlawfully

and with malice aforethought caused" Walton's death. *Whittaker v.

State*, 317 Ga. 127, 130 (2023) (cleaned up). Malice "incorporates the

---

the trial court erred by denying his motion for new trial on the general grounds. We address the claims separately because the general grounds and a challenge to the legal sufficiency of the evidence are "two distinct legal arguments." *King v. State*, 316 Ga. 611, 616 n.8 (2023) (quotation marks omitted). And while Welsch challenges the sufficiency of the evidence to support his "convictions" generally, his argument focuses solely on the evidence supporting his malice murder and felony murder convictions. So we limit our sufficiency review to Welsch's murder convictions. See *Holloway v. State*, 320 Ga. 668, 669 n.2 (2025).

intent to kill." Id. (quotation marks omitted). Felony murder predicated on aggravated assault required the State to prove that Welsch caused Gore's death while "attempting to commit a violent injury to the person of another with a deadly weapon." *Whisnant v. State*, 322 Ga. 253, 258 (2025) (cleaned up).

We have no trouble concluding that the trial evidence was constitutionally sufficient to support Welsch's convictions. Eyewitness testimony and Welsch's cell phone location data placed Welsch at the scene of the shooting. Security footage corroborated witness accounts of the shooting. Welsch also made numerous incriminating statements, as shown by his phone and social media records. And Welsch fled the state hours after the crimes. Finally, two eyewitnesses—including one of the victims—identified Welsch as the shooter. Welsch's objections to the credibility of certain witnesses,[3] the State's failure to recover the murder weapon, and

---

[3] As part of these credibility complaints, Welsch passingly asserts that Gillard was an "untrustworthy accomplice" and that Gillard's testimony that "Welsch exited a vehicle before gunshots rang out and returned saying, 'I got them n*****s,'" was not sufficiently corroborated, as required by OCGA § 24-

8

the absence of DNA or fingerprint evidence concern only the weight of or conflicts between pieces of evidence. It was for the trial court, as factfinder, to resolve those questions. See, e.g., *Beamon v. State*, 314 Ga. 798, 800–01 (2022) ("[W]e do not reweigh the evidence." (quotation marks omitted)). And the State was not required to prove Welsch's guilt with any particular kind of evidence. See *Rich v. State*, 307 Ga. 757, 759 (2020). From the evidence recounted above, a rational trier of fact could find beyond a reasonable doubt that Welsch intentionally shot and killed Walton and that he caused Gore's death by repeatedly shooting at him. See, e.g., *Howard v. State*, 318 Ga. 681, 684–85 (2024) (sufficient evidence to sustain conviction for felony murder by aggravated assault when multiple eyewitnesses identified defendant as shooter, ballistics evidence confirmed witnesses' testimony, and defendant admitted to shooting

---

14-8. This does not affect our sufficiency analysis because we consider *all* evidence presented at trial. See *Copeland v. State*, 314 Ga. 44, 47 (2022). And while we typically address accomplice corroboration issues separate from due process sufficiency claims, see, e.g., *Johnson v. State*, 311 Ga. 221, 223 n.2 (2021), Welsch makes only passing reference to OCGA § 24-14-8 and instead argues Gillard's testimony was entitled to little weight. So we treat Welsch's reference to Gillard's testimony as a sufficiency argument and reject it.

victim); *Garay v. State*, 314 Ga. 16, 19–21 (2022) (sufficient evidence to sustain murder conviction, despite lack of forensic evidence directly implicating defendant, when defendant confessed to crimes, fled country after crimes were committed, and crime scene and ballistic evidence corroborated inculpatory witness testimony); *Jackson v. State*, 306 Ga. 706, 708 (2019) (sufficient evidence to sustain murder conviction when multiple witnesses identified defendant as shooter, co-indictee testified that defendant had handgun right before shooting, and victim died of gunshot wound from handgun of same caliber).

3. Welsch also argues that the trial court abused its discretion by refusing to grant him a new trial on the "general grounds." Trial courts have discretion to grant a new trial "when the verdict of a jury is found contrary to evidence and the principles of justice and equity," OCGA § 5-5-20, or is "decidedly and strongly against the weight of the evidence," OCGA § 5-5-21. Those statutes—the "general grounds"—direct the trial court to "consider certain matters beyond the sufficiency of the evidence[,]" including "conflicts

in the evidence, the credibility of witnesses, and the weight of the evidence." *Bostic*, 322 Ga. at 696 (quotation marks omitted). A "trial court's decision" considering the general grounds is "left to the sole discretion of the trial court"; our role on appeal is "limited to determining whether the trial court exercised that discretion." *Whisnant*, 322 Ga. at 259.

Assuming for the sake of argument that the general grounds statutes apply at a bench trial, this claim fails. In addition to considering the constitutional sufficiency of the evidence, the trial court cited OCGA §§ 5-5-20 and 5-5-21 and expressly considered the weight of certain pieces of evidence and the credibility of certain witnesses before ultimately denying Welsch's general-grounds claim. The trial court's order shows that it properly exercised its discretion in denying Welsch's motion for new trial on the general grounds, so this claim presents nothing for us to review. See *Bostic*, 322 Ga. at 696–97; *Whisnant*, 322 Ga. at 259.

4. Finally, Welsch argues that the trial court erroneously admitted a statement from Walton in violation of Georgia's

11

evidentiary rule against hearsay and the federal Confrontation Clause. At trial, the State played a recorded phone call between Martinez and Walton's mother, during which Martinez said that Walton identified Welsch as the shooter to Martinez shortly after Walton was shot. The State also played clips from a police interview of Martinez, during which Martinez repeated that account. Welsch did not object on Confrontation Clause or hearsay grounds, so we review these claims for plain error only. See *McKinney v. State*, 307 Ga. 129, 133 (2019). To prevail on this claim, Welsch must therefore identify a legal error "that was not affirmatively waived"; was "clear and not open to reasonable dispute"; that "affected his substantial rights"; and that "seriously affected the fairness, integrity[,] or public reputation of judicial proceedings." *Lupoe v. State*, 300 Ga. 233, 243 (2016) (cleaned up).

"A Confrontation Clause violation occurs when an out-of-court 'testimonial' statement is admitted into evidence and the declarant is unavailable at trial and was not previously subjected to cross-examination. A statement is testimonial if its primary purpose was

to establish evidence that could be used in a future prosecution." *Denson v. State*, 307 Ga. 545, 548 (2019) (cleaned up). Welsch claims Walton's identification "was testimonial and … was a deliberate statement meant to identify a suspect in a criminal investigation." And Welsch says admitting this statement violated the Confrontation Clause because he never confronted or cross-examined Walton.

But Welsch has not shown that the trial court clearly and obviously erred by not excluding Walton's statement on Confrontation Clause grounds. An error is clear and obvious when it is "plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." *Burke v. State*, 320 Ga. 706, 707–08 (2025). And beyond a bare assertion that Walton's identification was testimonial, Welsch makes no argument and cites no record evidence or authority supporting his claim that, in making the statement, Walton primarily intended to create evidence to be

used against Welsch.[4] Walton made the statement to an acquaintance of several years, shortly after being shot, and with no apparent indication that he intended the statement to be used at trial later. See *Miller v. State*, 289 Ga. 854, 855 (2011) (victim's statement to friend, which identified the defendant shortly after a fight with the defendant, not testimonial because made to seek help with ongoing emergency). Cf. *Carter v. State*, 315 Ga. 214, 223 (2022) (telling a friend that, if anything happened to declarant, "[the defendant] did it" was nontestimonial statement); *Fitts v. State*, 312 Ga. 134, 140 (2021) (statement not testimonial when made shortly after shooting, before any arrests, and to one's father rather than police). But we need not decide whether Walton's statement was in fact testimonial because Welsch has identified no authority showing that the trial court clearly and obviously erred by not concluding that the statement was testimonial. And we have found no such authority ourselves. So the trial court did not plainly err and

---

[4] Welsch cites only *Crawford v. Washington*, 541 US 36 (2004), the case establishing the standard for evaluating Confrontation Clause claims. And he offers no analysis—only conclusory assertions—to support this claim.

Welsch's Confrontation Clause claim fails.

Nor did the trial court plainly err by failing to exclude Walton's identification of Welsch on hearsay grounds. Welsch argues that no hearsay exception (particularly the excited utterance and dying declaration exceptions, see OCGA §§ 24-8-803(2), 24-8-804(b)(2)) would have covered Walton's statement. But even if Walton's statement fits no hearsay exception, Welsch did not object to that statement on hearsay grounds. And it is not clear and obvious that a trial court must "step in and exclude … hearsay absent an objection." *Dees v. State*, 322 Ga. 498, 502 (2025). See also OCGA § 24-8-802 ("[I]f a party does not properly object to hearsay, … the hearsay evidence shall be legal evidence and admissible."). So even if it should have been excluded upon proper objection, "no controlling authority made it clear that the trial court had to exclude the un-objected-to" testimony, and this claim fails. *Dees*, 322 Ga. at 502.

*Judgment affirmed. All the Justices concur.*